```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF RICHMOND - CRIMINAL TERM - PART 12
 2   -------------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,
 3
                     -against-                    Indictment
 4                                                335/06
     TALIYAH TAYLOR,
 5
                             Defendant.
 6   -------------------------------------------X
     SANDOVAL
 7   ANTON MARCHI
     JURY SELECTION
 8                             County Courthouse
                               Staten Island, New York
 9
                               October 6, 2008
10

11   B E F O R E:

12        HONORABLE ROBERT COLLINI,
                             Justice, Supreme Court.
13

14
     A P P E A R A N C E S:
15

16               DANIEL DONOVAN, ESQ.,
                 Appearing for the People
17               District Attorney - Richmond County
            BY:  MARIO MATTEI, ESQ.
18               JANET SILVERS, ESQ.
                 Assistant District Attorneys
19

20               CHRISTOPHER RENFROE, ESQ.
                 JOSE ARUJO, ESQ.
21               For the Defendant

22

23                       - - -

24

25
```

**Proceedings** 2

1          THE CLERK: Calender number one on

2     the motion calendar, and calendar number

3     two on the trial calendar, indictment

4     335/06, People of the State of New York

5     against Taliyah Taylor.

6          Appearances, please.

7          MS.  SILVERS: Janet Silvers.

8          MR. MATTEI:  Mario Mattei.

9          MR. RENFROE:  Christopher Renfroe

10    for Miss Taylor.  Also for Miss Taylor,

11    Jose Arujo (sp)

12          MR. ARAUJO: Good morning, your

13    Honor.

14          THE COURT:  Good morning, although

15    it is after noon.

16          We had adjourned today for trial.

17    Are both parties ready to proceed?

18    Counsel?

19          MR. MATTEI:  Yes, your Honor.

20          MR. RENFROE:  Yes, your Honor.

21          THE COURT:  Before we do that, we

22    had a bench conference at which time there

23    had been an offer conveyed to Miss Taylor.

24          Mr. Renfroe, you were going to

25    discuss that with Miss Taylor, I believe,

1        and her family, and then you were going to

2        tell me what the situation was.

3                MR. RENFROE:  Your Honor, may I

4        just take one second to speak with Miss

5        Taylor?

6                THE COURT:  Go ahead.

7                (Discussion held off the record.)

8                MR. RENFROE: Your Honor, I have

9        explained it to my client.  I have

10       explained to her that she's charged with

11       murder, and that even if the judge were

12       willing to give less, the charge carries a

13       life sentence.  I have also informed her

14       that --

15               THE COURT: The minimum on the

16       sentence would be fifteen years to life.

17       The maximum would be twenty five to life.

18               MR. RENFROE:  Yes.

19               I have also explained to her that

20       there are not just the deceased, there are

21       other victims in a separate crash.

22               So that even if one were to succeed

23       in not being convicted of murder, there is

24       a potential that could run consecutive,

25       which indicates that she could do seven and

**Proceedings**                          4

 1 | a half to 22 years.
 2 | THE COURT: It could run
 3 | consecutive, even if she were convicted of
 4 | murder.
 5 | MR. RENFROE: Yes. If she is
 6 | convicted, that could also run consecutive.
 7 | I explained that to her.
 8 | We had a conversation about the
 9 | defense, and if the defense proves
10 | meritorious that there is a possibility
11 | there is no date for which she would be
12 | released, based on the fact she is
13 | currently suffering from -- I think the
14 | doctors that treat her think she is still
15 | suffering from a mental disease or defect,
16 | and there would have to be as finding that
17 | she was no longer dangerous to allow her
18 | release.
19 | I explained that to Miss Taylor
20 | again today. I saw her in Rikers. She
21 | informs me she wishes to go forward and
22 | proceed to trial.
23 | I have also explained this to her
24 | family. They met me in my office over the
25 | weekend. I know they've had conversations

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

1        with her.  I won't get into the substance

2        of that conversation, other than the fact

3        that we've advised her of the plea offer

4        which is determinate 15 years, and she has

5        informed me she wishes to proceed to trial.

6                THE COURT: Is that correct, Miss

7        Taylor?

8                THE DEFENDANT: Yes.

9                THE COURT: You understood when you

10       discussed the situation and the liability

11       with Mr. Renfroe?

12               THE DEFENDANT:  As we discussed two

13       different things when he came and see me

14       Sunday and discussed what he just now

15       discussed, but yes.

16               THE COURT: You understand that

17       there is an offer of 15 years?

18               THE DEFENDANT: Yes.

19               THE COURT: And you are not

20       interested in that?

21               THE DEFENDANT: I don't think that

22       that's a fair offer.  So, no.

23               THE COURT: The question is whether

24       you are interested or not.

25               THE DEFENDANT: No.

**Proceedings**                                       6

1             THE COURT: So that's fine.  Then we

2        will go to trial.

3             Do you have a witness list,

4        counsel?  I received a witness list from

5        the People.  I assume you received a copy?

6             MR. RENFROE:  Yes, I did, your

7        Honor.

8             THE COURT:  I would like a witness

9        list from the defense counsel.

10            MR. RENFROE:  I have to add two

11       others on there.

12            THE COURT: Why don't we proceed to

13       Sandoval hearing before we proceed to that?

14            MR. RENFROE:  Your Honor, before we

15       proceed to the Sandoval hearing, I just

16       wanted to make a motion to seal the

17       courtroom.  I don't think it is a

18       procedure.  We are discussing the

19       defendant's criminal history and especially

20       in this case.

21            MR. MATTEI: No, Judge.

22            THE COURT: For purposes of the

23       Sandoval hearing and the Sandoval hearing

24       only, exclude the press on behalf of both

25       parties.

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

| | |
|---|---|
| 1 | MR. RENFROE:  May I approach? |
| 2 | THE COURT:  Yes. |
| 3 | MR. RENFROE:  I haven't had a |
| 4 | chance to make a copy for the district |
| 5 | attorney. |
| 6 | THE COURT: Dr. Berrill? |
| 7 | MR. RENFROE:  Yes. |
| 8 | THE COURT: B e r r i l l. |
| 9 | Dr. Pabon? |
| 10 | MR. ARAUJO:  Thomas M. Pabon. |
| 11 | (A side bar discussion was held off |
| 12 | the record.) |
| 13 | THE COURT: With respect to |
| 14 | Sandoval, counsel? |
| 15 | MR. MATTEI: Judge, the defendant |
| 16 | has a juvenile delinquent, was arrested and |
| 17 | charged with robbery in the second degree |
| 18 | for an incident in 1997, June of 1997, and |
| 19 | she was eventually convicted of grand |
| 20 | larceny from the person on July 30 of 1997, |
| 21 | adjudicated a juvenile delinquent. |
| 22 | THE COURT: July 30 of -- |
| 23 | MR. MATTEI:  7-3-97. |
| 24 | THE COURT: Grand larceny -- |
| 25 | received Y.O.? |

| 1 | MR. MATTEI: No, J.O. She received |
| 2 | a probation of nine months as a juvenile |
| 3 | delinquent. |
| 4 | During that incident, she and |
| 5 | another girl targeted a person to try and |
| 6 | steal their buss pass. I believe the |
| 7 | defendant held her while the other girl |
| 8 | beat her, and they took her bus pass and |
| 9 | then left. |
| 10 | THE COURT: Is that here in Staten |
| 11 | Island? |
| 12 | MR. MATTEI: Yes, your Honor. |
| 13 | Judge, in connection with that, which just |
| 14 | plays into some of the other aspects later, |
| 15 | the defendant was given her Miranda |
| 16 | warnings with her mother present, signed |
| 17 | the sheet and acknowledged her Miranda |
| 18 | warnings and gave a full statement as to |
| 19 | what she had done in that instance. |
| 20 | That just may play in because we |
| 21 | have the detective investigator who gave |
| 22 | her the Miranda Warnings,and we'd like |
| 23 | to -- he is on our list. |
| 24 | He is detective investigator |
| 25 | Michael Seminara, with regard to her |

 1          knowledge of Miranda warnings.

 2                    This may come in later with her

 3          knowledge of Miranda warnings and thus the

 4          voluntariness of her Miranda waiver in this

 5          case.

 6                    That's one of the factors, Judge,

 7          especially a knowing and --

 8                    THE COURT: Counselor, I am aware

 9          they are defective.

10                    MR. MATTEI:  March 1st of 1999 she

11          was adjudicated a youthful offender in

12          Manhattan --

13                    THE COURT: March 1st of 1999? A

14          Y.O. for what?

15                    MR. MATTEI:  It was for attempted

16          criminal possession of a weapon in the

17          second degree.

18                    THE COURT: A felony?

19                    MR. MATTEI: A felony.  She received

20          five years probation.  She was apparently

21          at a nightclub and she pulled a gun on a

22          security guard, and I think she pulled the

23          trigger, but the gun didn't fire.

24                    She was charged with several other

25          things, that is what she was convicted of,

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

1        attempted criminal possession of a weapon

2        in the second degree.

3                She received five years probation

4        and she -- I believe the probation records

5        are in the file.

6                She violated that probation several

7        times thereafter, sometimes with drug

8        testing for bad drug testing and other

9        matters.

10               She was -- so, that's another

11       felony, your Honor. In  2000, April 27 of

12       2000, she was arrested for operating a

13       motor vehicle.  Her ability to do so was

14       impaired by alcohol, 1192 sub 2 and on

15       10-26 of 2000 she was convicted of a VTL

16       1129.

17               THE COURT: Is this the same case?

18               MR. MATTEI:  Yes, Judge.

19               THE COURT: What day was the

20       conviction?

21               MR. MATTEI:  I believe 10-26 of

22       2000.

23               THE COURT: Convicted of DWI?

24               MR. MATTEI:  Yes, your Honor.

25               THE COURT: A misdemeanor?

1             MR. MATTEI:  Yes, your Honor, for

2        which she received, I believe she paid a

3        $500 fine in lieu of receiving four months

4        in jail.  Part of that involved her license

5        being suspended, and then eventually

6        getting a probationary license years later

7        after that was cleared up, after the

8        intoxication was cleared up.

9             She also has a speeding -- she has

10       several driving incidents, but most

11       particularly a speeding ticket which

12       resulted in her license being suspended,

13       and on July 31 of 2006 -- the ticket was

14       from June of 2006.  Her license was

15       suspended July 31 of 2006, and not only

16       would that be a Sandoval question, your

17       Honor, I think that would spill over into

18       the Molineaux question with regard to the

19       status of her license on the day in

20       question, which was October 18 of 2006.

21            THE COURT: Is it your intention

22       to -- it is one of the charges.

23            Is it your intention to bring a

24       witness, one of the witnesses I think you

25       already indicated, that one of the

 1 | investigators, detective investigators or
 2 | something to that effect, I don't know.
 3 |          Are you intending to bring a
 4 | witness in to testify that her license had
 5 | been suspended, detective investigators or
 6 | something to that effect?
 7 |          MR. MATTEI: Yes, your Honor.
 8 |          THE COURT: On particular days, her
 9 | license has been suspended twice?
10 |          MR. MATTEI:  Yes, your Honor.
11 |          Once for the automatic suspension
12 | with the driving while intoxicated
13 | conviction, and then again in 2006 for the
14 | speeding ticket, she was found guilty.
15 |          THE COURT: One of the counts is
16 | driving with a suspended license.
17 |          MR. MATTEI:  Yes, your Honor.
18 |          THE COURT: So the suspension that
19 | led to that, or that's the subject of that
20 | count is what suspension?
21 |          MR. MATTEI:  Is the suspension of
22 | her probationary license with regard to --
23 | for receiving a ticket, for actually
24 | receiving several things, but the final
25 | straw was receiving a speeding ticket.

1              THE COURT: Then the suspension of

2      her license for the DWI has nothing to do

3      with this case?

4              MR. MATTEI:  It starts the whole --

5              THE COURT: Answer the question,

6      counsel.

7              I don't want it starting with the

8      whole --

9              It has nothing to do with the

10     indictment before me.

11             MR. MATTEI:  It does and it

12     doesn't, Judge.  She is charged --

13             THE COURT: Either it does or it

14     doesn't.

15             MR. MATTEI:  In my position it

16     does.

17             THE COURT: She was driving with a

18     probationary license and that license was

19     suspended prior to this incident, is that

20     correct?

21             MR. MATTEI: Yes,  your Honor.

22             THE COURT: Then I don't understand

23     what the DWI has to do with this.

24             MR. MATTEI:  She is charged with a

25     felony in which --

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

1          THE COURT: Felony?

2          MR. MATTEI:  Yes.

3          THE COURT: When?

4          MR. MATTEI:  On this date, it is in

5    this indictment.

6          THE COURT: In this indictment, but

7    we are talking about Sandoval at this

8    point.

9          MR. MATTEI: It fits in two ways,

10   your Honor.

11         THE COURT: The fact that she was

12   driving with a probationary license that

13   was suspended could be brought out on your

14   direct case.

15         I assume you intend to do that

16   because of the count in the indictment of

17   driving with a suspended license?

18         MR. MATTEI:  Yes, your Honor.

19         THE COURT: So you intend to do

20   this?

21         MR. MATTEI: Yes, your Honor.

22         THE COURT: The fact that you had a

23   probationary license and that was

24   suspended, I assume there are going to be

25   witnesses on your direct case who are going

 1          to come in and do that.

 2                    We are talking about what you

 3          should cross examine her with should she

 4          take the stand.

 5                    My suggestion is you want to ask

 6          her for a license that was suspended prior

 7          to that suspension?

 8                    MR. MATTEI: Yes, your Honor.

 9                    THE COURT: Is there anything else?

10                    MR. MATTEI: With regard to -- well,

11          Judge, just two other cases that we know

12          about where they were not prosecuted due to

13          30.30 in criminal court, but she had an

14          incident with her --

15                    THE COURT: This is by way of

16          Molineaux application?

17                    MR. MATTEI: It is Sandoval as well,

18          Judge.

19                    THE COURT: They are convictions?

20                    MR. MATTEI: No.  I believe it is a

21          prior bad act which is falling under

22          Sandoval as well.  I am just trying to

23          cover everything, Judge, so there are no

24          spaces.

25                    I believe it fits into both.  She

1        possessed an amount of cocaine, and I

2        believe eleven Ecstasy tablets in 2002.

3                At that time it was because she was

4        driving with a suspended license.  That's

5        one of the reasons she was pulled over.

6        She had no seat belt, arrested for

7        suspended license, and then they discovered

8        drugs on her person in the police station,

9        ecstasy and cocaine.

10               THE COURT: You said there were two

11       things.  What is the other thing?

12               MR. MATTEI:  Cocaine and Ecstasy.

13               THE COURT: That was the same

14       incident?

15               One incident,two different types of

16       drugs?

17               MR. MATTEI:  Yes.

18               THE COURT: Is that it?

19               Mr. Renfroe?

20               MR. RENFROE:  Thank you, your

21       Honor.

22               I think I should start, first of

23       all --

24               THE COURT: Start from the Y.O., go

25       to the Y.O --

1            MR. RENFROE: Which is not a

2       conviction.  It's a sealed family court

3       matter. If you would have thought it was a

4       conviction, but a finding in Family Court

5       which is over ten years old, I think any

6       probative value is outweighed by the

7       potential prejudice.

8            THE COURT:  Move on to the Y.O..

9            MR. RENFROE: Your Honor, the

10      youthful offender conviction is a sealed

11      record.  In that case, again, It's from

12      1999, asks a question about the age,

13      whether it actually represents -- it's

14      eight years old -- the facts --

15           THE COURT: What was the day of that

16      conviction? Was that 3-1-99?

17           MR. RENFROE:  Yes, 3-1-99.  The

18      case started in 1998, 513/98.

19           First of all, it is a sealed

20      record.  It is she had a gun, he believes

21      she pulled the trigger --

22           THE COURT: I am not going to

23      include the underlying facts.

24           MR. RENFROE: Under the underlying

25      facts, there is no conviction because that

1       record is sealed.  The conviction is

2       vacated by youthful offender finding.  So,

3       there is no -- she received five years

4       probation on a felony conviction.

5            The youthful offender seals the

6       record.

7            THE COURT: I understand that.  It

8       doesn't vacate the conviction.

9            MR. RENFROE:  The People also wish

10      to elicit a charge of driving that they

11      have raised the driving under the

12      influence, which is exactly the crime here.

13           I think that goes directly to

14      propensity.  Understand that they have

15      raised the driving while intoxicated as a

16      felony, and to allow them to bring the

17      charge as a felony, there is a stipulation

18      which we are allowed to enter into, not

19      saying that there is no -- that it's

20      properly elevated, but I don't believe they

21      should be allowed to --

22           THE COURT: Well, that's something

23      you are going to discuss if you want to

24      enter into the stipulation with respect to

25      the prior, other DWI which allows the

*ELIZABETH W. CRUZ     PRINCIPAL COURT REPORTER*

1        probation.

2                MR. RENFROE:  That is fine.  I am

3        entering into a stipulation, I will put it

4        on notice now.

5                THE COURT: We will do that

6        tomorrow.  That doesn't mean I am not going

7        to let them talk about whether she was

8        convicted of a misdemeanor on that date.

9                MR. RENFROE: I understand.  I think

10       that is a reasonable compromise.

11               I also indicate they wish to bring

12       out a speeding ticket --

13               THE COURT: We are not going to talk

14       about the speeding ticket.

15               MR. RENFROE: There is a question of

16       the bad act that they indicated, which is

17       the fact is that she had a fight with her

18       mother, and that was a dismissed case, and

19       she possessed cocaine and eleven ecstasy

20       pills --

21               THE COURT: That was a separate

22       incident, I believe, fight with the

23       mother --

24               MR. RENFROE:  The fight with her

25       mother is a case that was dismissed.  I

1       think that's not a proper subject to cross

2       examine, and --

3               THE COURT:  They wanted to elicit

4       that on their direct case.That's the nature

5       of Molineaux.

6               MR. MATTEI:  I didn't do the

7       Molineaux with regard to the drunk driving.

8       I didn't know to address that as well.

9               You told me just Sandoval.  You

10      were going to -- you said it was the same

11      thing.  So, I want to do it all.

12              THE COURT: No, that's okay.  So you

13      are going to make a separate Molineaux

14      application when we are finished?

15              MR.MATTEI:  Yes, Judge. We will

16      address that insofar as it relates to

17      Molineaux.

18              MR. RENFROE: There are two cases I

19      believe were dismissed, and so I would ask

20      your Honor not to allow them to go into

21      those matters.

22              THE COURT: I am not going to rule

23      on that.  Move on.

24              MR. RENFROE:  There is one other

25      question about whether it was elicited to

1        indicate she was doing drugs on probation

2        again.

3                  One of the charges here is that she

4        took an ecstasy pill, and I think that

5        lends to the argument of propensity.  So, I

6        would ask you to not allow the district

7        attorney to bring that out on their direct

8        case or to cross examine her on that

9        either.

10                 THE COURT: Do the People want to

11       mention she took ecstasy when?

12                 MR. MATTEI:  Judge, it's clear from

13       the records that she took --

14                 THE COURT: No, I am talking about

15       that case.  I am talking about other than

16       this case.

17                 MR.  MATTEI:  She told her doctors

18       that she took ecstasy every weekend for the

19       last four years.  I assume when the doctors

20       testify, you will ask them.

21                 We are talking about what we are

22       going to talk about her prior criminal

23       record.  So, for Sandoval purposes, that --

24                 THE COURT: All right.  I

25       understand.

1          With respect to the Sandoval

2     application, should the defendant take the

3     stand, and dealing exclusively with the

4     prior criminal convictions, the People

5     would be allowed to inquire as to whether

6     or not on 3-1-00 the defendant was

7     convicted of a felony and whether or not on

8     10-28 of 2000 the defendant was convicted

9     of an A misdemeanor.

10         I want the defense to be cautioned

11    with respect to this ruling.  Should the

12    defendant take the stand and make

13    representations as to prior activities that

14    she may have been involved with, make

15    representations as to drug use or lack of

16    drug use, should she make a representation

17    as to why she was convicted of these

18    felonies and has besides had to go to trial

19    now, and then by this, I mean should she

20    say something to the effect that "I pled

21    guilty to those cases because I was guilty,

22    but I am not pleading guilty now because I

23    am not guilty.

24         That's just one example that is not

25    exclusive of other ways that the defendant

1        could, in fact, open the door as to

2        underlying facts, not only these two cases,

3        but other cases that the People discussed.

4                At this point, they are  limited,

5        but they are limited to the extent that the

6        defendant uses it to move beyond what we've

7        been just talking about.

8                It's not a sword nor a shield.  It

9        is simply a court ruling, should it be used

10       as either, the People wish to read, open my

11       decision, it is my intention to hear an

12       application under those circumstances; is

13       that clear?

14               MR. RENFROE:  That's correct, your

15       Honor.

16               THE COURT:  I don't know if I made

17       myself clear.

18               MR. RENFROE:  You did.

19               THE COURT: The reason I am

20       cautioning you is because I want the

21       defendant to know at this point we've been,

22       I believe, balanced in limiting the rest of

23       the inquiry that can occur should she take

24       the stand with respect to her prior

25       criminal activity which is more extensive,

1       I believe, than we are allowing in.  But,

2       she use that someway to her advantage.  I

3       will revisit this ruling and I don't think

4       I could be any more clearer than that.

5               Do you understand, Miss Taylor?

6               THE DEFENDANT: Yes.

7               THE COURT: Obviously if the People

8       believe, should Miss Taylor testify that

9       she's gone beyond the bounds of this

10      conversation, I will entertain an

11      application to reopen this area.  Okay?

12              MR. MATTEI:  Yes, your Honor.

13              THE COURT: With respect to

14      Molineaux, counsel?

15              MR. MATTEI: Judge, I think the

16      drunk driving conviction goes to the

17      defendant's state of mind on this night.

18              This is a case where they are --

19              THE COURT: It goes to one of the

20      counts in the indictment, and Mr. Renfroe

21      has just indicated that he wants to

22      stipulate -- that he would stipulate to

23      that prior conviction.

24              Now we are going beyond that.  Now

25      you are saying it is relevant for a

 1    different purpose.  It is actually relevant

 2    to the murder charge and the two reckless

 3    endangerment charges, separate and apart

 4    from standing alone as a driver while

 5    intoxicated is a felony.

 6              It is relevant especially in this

 7    case, your Honor, where there is an

 8    insanity defense being interposed.  This

 9    goes directly to her state of mind.

10              THE COURT: In so far as this

11    reflects -- I want to separate this from

12    the insanity defense in so far as this

13    reflects on a finding of a doctor with

14    respect to her mental condition as it

15    relates to a disease or defect at the time

16    that this occurred.

17              I will hear you on that point.  We

18    are talking about introducing this on your

19    direct case.

20              MR. MATTEI:  To show --

21              THE COURT: Prior to an affirmative

22    defense being interposed.

23              MR. MATTEI: Yes.

24              THE COURT: Regardless of whether or

25    not they have opened on an affirmative

1       defense, they have no obligation to go

2       forward with it.  You are talking about

3       apples and oranges here, or at least I am

4       interposing apples with oranges.

5            Should they put a doctor on who

6       wants to talk about her mental condition

7       and this becomes relevant, these items

8       become relevant with respect to that

9       diagnosis, certainly I will hear you at

10      that point, or I assume you will ask the

11      questions, and if there are objections we

12      will make a determination then, and it very

13      well could be relevant then as opposed to

14      introducing it independently with the

15      assumption that this is the way they are

16      going to go.

17           MR. MATTEI: Regardless of whether

18      they are going to go that way or not.  I

19      think in and of itself, even though

20      Molineaux, as we know --

21           THE COURT: That is your

22      application.

23           MR. MATTEI: For the reason, Judge,

24      that it goes to her state of mind.  This is

25      a case where she is charged with

1      recklessness and depraved indifference.

2              She was intoxicated by her own

3      admission on moonshine, homemade moonshine

4      is what she told the detectives.  She drove

5      with no headlights on.  She drove without

6      regard to traffic control devices, and she

7      crashed into a home on Victory Boulevard.

8              She went across a sidewalk and

9      across a walk --

10             THE COURT: You are not talking

11     about what is in this indictment?

12             MR. MATTEI: No, Judge.

13             THE COURT: You are showing what is

14     on prior --

15             MR. MATTEI:  It is state of mind.

16     It is absolute direct proof of her

17     disregard for driving under the influence

18     of ecstasy on October 18, that everybody

19     could lecture about what could happen to

20     you while you drive while intoxicated.

21             She actually drove her car into a

22     home.  She hit a house.

23             THE COURT: What is the next?  Is

24     there another application other than this?

25             MR. MATTEI:  I think that shows

1          that she, of all people --

2                  THE COURT: Counsel, I understand

3          your argument.  Is there another one?

4                  MR. MATTEI:  Just drug use, your

5          Honor; again the drug use.

6                  THE COURT: Counsel?

7                  MR. RENFROE: As to the prior charge

8          of driving under the influence of alcohol,

9          that goes directly to the propensity, and

10         the way they want to use it is to say see,

11         she did the same thing --

12                 THE COURT: I am going to stop you

13         for a second.  I am not going to let them

14         talk about that on their cross examination.

15                 Should you of course bring in a

16         doctor and that become relevant as to the

17         doctor's diagnosis, certainly I will hear

18         the People at that point.

19                 Prior drug use then making a

20         diagnosis as to mental disease or defect

21         may, in fact, be relevant, may be the sort

22         of thing that is something used by doctors

23         to make these kinds of diagnoses, and

24         certainly may, in fact, be something that

25         the doctor should be questioned on and may

1    be allowed to be questioned on.

2            I am going to reserve decision on

3    that.  Obviously, if the People want to

4    bring that my attention, then we will talk

5    about it.

6            We are talking about using this on

7    their direct case, and I am not going to

8    let them use that on the direct case.

9            Deal with the DWI.  I just want to

10   just add, before we go there, has the same

11   caveat as I just mentioned, prior DWIs,

12   prior driving, underlying facts pertaining

13   to prior incidents where someone has been

14   driving in a car under the influence,

15   certainly might be relevant to a doctor

16   making a diagnosis as to whether or not the

17   defendant suffers from a disease or defect.

18           That's a different issue that I am

19   not ruling on now.  I would probably -- I

20   am just going to suggest to you -- probably

21   be inclined to allow those questions to

22   come in should the People be able to show

23   that they are pertinent to the diagnosis.

24           That's just preliminary at this

25   point. I will make a final ruling later,

1       but I don't want you to think that this

2       ruling somehow precludes that.

3              MR. RENFROE:  I understand, your

4       Honor.  Thank you.

5              THE COURT: I want to make that

6       clear.  With respect to using the DWI under

7       direct examination, without any

8       interposition of an affirmative defense,

9       that is very different.

10             At this point, I am going to rule

11      that they can't bring that out.  I don't

12      just -- I just don't see the nexus with

13      this particular case.  This case is

14      going -- it is not about whether or not she

15      drove while she was drunk or reckless at a

16      different time.  It is about whether she

17      was reckless to the point of being depraved

18      at this point in time, for this particular

19      incident.

20             I don't think whether she was

21      someone who was -- who evinced a depraved

22      indifference to prior life on a prior

23      occasion and was reckless on a prior

24      occasion, I don't see at this point it has

25      been tied in.

1       It may have to do whether she has

2  mental disease or defect.  That is a

3  different issue, but as an independant act

4  of recklessness, I don't think it is

5  appropriate for this case at this point, so

6  I am going to deny that application with

7  the caveat that should they go forward with

8  an affirmative defense.

9       I will hear you with respect to

10  cross examination of that particular

11  witness or other witnesses with respect to

12  that, and also should the defendant

13  testify, these might be issues that would

14  arise at that point.

15       MR. MATTEI:  I would also ask you

16  to keep an open mind, as I know you will,

17  with regard to cross examination of other

18  witnesses who may -- again, this is --

19  she's also charged with manslaughter as

20  well as the murder.

21       Again, I think you have heard my

22  argument and it really does go to her state

23  of mind, again, if you look at this charge

24  it is a conscious disregard for the lives

25  of others, and clearly to me somebody who

1    has already experienced driving a car with

2    passengers in an intoxicated condition,

3    crashes into a house, and my only point is

4    reiterating, if it comes up on cross

5    examination where she's made to look like

6    this was just something that happened, this

7    is not such a bad act, or that it was not a

8    disregard, that I should be able --

9           THE COURT: Obviously if this comes

10   up, I will hear you.  If there is an effort

11   by the defense to show this as an isolated

12   aberrational inference, I may make it

13   relevant.

14          Counsel, I guess you would be

15   advised that should you make that argument,

16   I will hear the People if they want to

17   renew this application.

18          MR. RENFROE: Thank you.  Your

19   Honor, just an issue --

20          THE COURT: That would be in the

21   nature of opening the door I suspect, and

22   clearly if that occurs, I will hear you at

23   that time.

24          MR. RENFROE: There is another issue

25   of -- I think entails, I don't know if I

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

1        should bring it up here.  I think they

2        indicated that at the time of the arrest,

3        that she used a different name.  I think it

4        is probably something that they intend to

5        use.

6                THE COURT: That was a statement

7        that she made.  I think that was done

8        already.

9                MR. RENFROE:  Right.  I just wanted

10       to point that out.I am not going to argue

11       that point at this time or --

12               THE COURT: I understand your

13       position.  The reality is that was

14       litigated when we did the Huntley hearing.

15               MR. RENFROE: You are not allowing

16       the speeding ticket in --

17               THE COURT: No.  What I am allowing

18       is whether or not she was convicted of a

19       felony on 3-1-99, whether or not she was

20       convicted of an A misdemeanor on 10-26-00.

21               Obviously it there are questions

22       about that that open the door as to what

23       the nature of the A misdemeanor was, the

24       fact that it was a DWI might become

25       relevant.

1           If there are witnesses that take

2       the stand for the defense in support of

3       some affirmative defense that may be

4       proffered, if these go to the diagnoses of

5       mental disease or defect, I will hear the

6       People and I will hear their witnesses, and

7       I will certainly consider whether or not it

8       is relevant to that sort of thing.

9           There will be appropriate

10      admonitions to the jury, should it be

11      relevant and for the purposes of its

12      relevance as far as making your diagnoses,

13      as opposed to propensity or some other

14      connection to this particular case.

15          They've been precluded from talking

16      about it on their direct case, unless, of

17      course, ask questions that seem to lead --

18      to mislead the jury into believing this was

19      an abberational conduct or something

20      somehow related to that.

21          Anything else?

22          MR. RENFROE:  The only thing is

23      just as to the allowing them to ask about

24      whether she was convicted of a felony, I

25      would just ask you to reconsider that so YO

 1    adjudication.  I think it vacates the

 2    felony conviction.

 3             THE COURT: It is a prior

 4    conviction.  I am going to let them talk

 5    about -- I am not letting them get involved

 6    with the underlying facts.  Obviously if

 7    you want to mention whether or not she was

 8    given a youthful offender adjudication with

 9    respect to that, that she violated on

10    several occasions, I am not allowing them

11    to talk about that.

12             I will allow you to ask the

13    question as to whether or not she was given

14    a youthful offender adjudication if you

15    want to, but I am going to allow them to

16    ask her whether on 3-1-99 she was convicted

17    of a felony, and whether or not on 10-26-00

18    she was convicted of an A misdemeanor.

19             That is the extent of the Sandoval

20    ruling and the extent of their cross

21    examination of the defendant with respect

22    to that particular issue, and also as I

23    have indicated before, without her opening

24    the door in the ways that we've mentioned

25    and otherwise.  She should be cautioned

1      that is a possibility.

2              With respect to Anton Marchi, have

3      we discussed that?  I think we have a

4      waiver?

5              (A side bar discussion was held off

6      the record.)

7              THE COURT:  I have a document in

8      front of me entitled Waiver of right to be

9      present at Voir Dire side bar conferences

10     commonly referred to as Anton Marchi

11     Waiver.

12             Miss Taylor, did you discuss this

13     with Mr. Renfroe?

14             THE DEFENDANT: Yes.

15             THE COURT:  This indicates that you

16     have a right to be present at side bar

17     conferences at which time the

18     qualifications of jurors to serve as jurors

19     in this trial will be discussed.

20             You are waiving that right.  This

21     has indicated that you are waiving that

22     right after I have indicated that you have

23     it, and you've discussed it with your

24     attorney, Mr. Renfroe, and you are waiving

25     that right voluntarily, knowingly and of

1       your own free will, is that correct?

2                   THE DEFENDANT: Yes.

3                   THE COURT: Do you understand what

4       right you are waiving?

5                   THE DEFENDANT: Yes.

6                   THE COURT: There is a line that

7       says Defendant and above that line there is

8       a signature that reads Taliyah Taylor; is

9       that your signature?

10                  THE DEFENDANT: Yes.

11                  THE COURT: Mr. Renfroe, is it your

12      professional opinion that after discussing

13      Anton Marchi rights with Miss Taylor, she

14      has voluntarily, knowingly and of her own

15      free will waived those rights?

16                  MR. RENFROE: Yes.

17                  THE COURT: Above that line there is

18      a signature which reads Christopher

19      Renfroe; is that your signature?

20                  MR. RENFROE:  Yes.

21                  THE COURT: I am going to approve

22      the waiver, and I am of the opinion that

23      the defendant has voluntarily, knowingly

24      and of her own free will, after discussing

25      what are commonly referred to as Anton

Case 1:14-cv-01402-ERK-LB Document 6-4 Filed 08/12/14 Page 38 of 164 PageID #: 830

1     Marchi rights with her attorney, has freely

2     and voluntarily waived those rights, and I

3     am going to affix my signature to the

4     document.

5         MR. MATTEI: Because of the issues

6     in this case, I don't know about asking

7     prospective jurors as to whether or not

8     they have any experience -- with regard

9     family, close friends -- to any type of

10     mental illness.

11         THE COURT: If you have a couple of

12     questions you want me to ask the panel as a

13     whole, give them to me after lunch. Both

14     sides; okay? You might have other things

15     you want me to ask them with respect to

16     newspapers, whatever.

17         MR. RENFROE: As to this record and

18     no other, could I just ask that it be

19     sealed?

20         THE COURT: Counsel?

21         MR. MATTEI: No objection, your

22     Honor.

23         THE COURT: So ordered. 2:20.

24         (Whereupon, a luncheon recess was

25     taken at 1:00 p.m.)

| | |
|---|---|
| 1 | A F T E R N O O N    S E S S I O N |
| 2 | THE CLERK: Calendar number one and |
| 3 | two, indictment 335/08, People of the State |
| 4 | of New York against Taliyah Taylor. |
| 5 | THE COURT: First order of business, |
| 6 | Mr. Mattei.  You handed over a list of |
| 7 | Rosario material along, I assume, with the |
| 8 | Rosario material. |
| 9 | MR. MATTEI: Yes, Judge, that was |
| 10 | the point of making the list up and to file |
| 11 | with the Court.  I gave Mr. Renfroe two |
| 12 | packages of stuff. |
| 13 | I believe he had a lot of it |
| 14 | already from discovery materials, but I |
| 15 | just went through the file to look for |
| 16 | things that would now be Rosario material |
| 17 | irrespective or not whether he had received |
| 18 | them yet. |
| 19 | THE COURT: Mr. Renfroe, you |
| 20 | acknowledge receipt of those. |
| 21 | MR. RENFROE:  I do acknowledge |
| 22 | receipt of the Rosario material, Judge, and |
| 23 | I signed for them. |
| 24 | THE COURT: The list I had dated, |
| 25 | and we will make a part of the Court file. |

**Proceedings**                    40

1              THE CLERK: Correct, your Honor.

2              THE COURT:  Mr. Renfroe, if you go

3    through the list that you have, and if

4    there is anything on the list that you do

5    not have, just bring it to my attention

6    tomorrow and before we open, and I will

7    make sure that the People get you a copy of

8    everything that you believe you didn't get.

9              So, just cross reference all of the

10   papers you have with the list and we will

11   make sure that you got everything.

12             Both sides ready for jury

13   selection?

14             MR. RENFROE: Yes, your Honor.

15             MR. MATTEI:  Yes, Judge.

16             MR. RENFROE: I have one other minor

17   issue.

18             THE COURT:  How about before we do

19   that, why don't we --

20             MR. RENFROE: That is the issue.

21   The gentleman is here who came in with --

22   he actually sent over a fax earlier today,

23   and he's here --

24             THE COURT: Put your name on the

25   record and tell us what you do.

1      MR. MESSINA: On behalf of Elmhurst

2  Hospital in New York City Health and

3  Hospitals Corporation, Matthew Messina from

4  Heidel, Pittoni, 99 Park Avenue, New York,

5  New York.

6      Pursuant to my appearance before

7  yourself on Friday, October 3, I spoke to

8  Dr. Martin Mann who is the Deputy Director

9  of the Psychiatric Department in Elmhurst

10  Hospital regarding the whereabouts of Miss

11  Taylor's forensic file, and he explained to

12  me that it is irreparably lost and was

13  discarded by an employee of Elmhurst

14  Hospital, Miss Kelsey Ann Smith, sometime

15  in January or February of 2008.

16      It was inadvertent.  Certainly they

17  did not realize that the Court was looking

18  for those documents at the time that they

19  were discarded.  There is no way to

20  reproduce them.

21      The Court order inquired as to what

22  was available on the computer system.  I

23  determined by Dr. Marro (sp) there was

24  nothing on the computer system.  The only

25  thing I recognized was the medical

1          treatment.

2                    Dr. Marro contacted the Forensic

3          Court Clinic, I guess, at Elmhurst Hospital

4          and they determined the only record of Miss

5          Taylor being examined was December 7, 2006

6          report by Dr. Pabon.

7                    THE COURT:  That report has already

8          been turned over to the People.

9                    MR. MESSINA: Yes, that's correct.

10         I obtained a copy of the report for my file

11         from the District Attorney's office.

12                   MR. RENFROE:  May we approach?

13                   THE COURT: Sure.

14                   (A side bar discussion was held off

15         the record.)

16                   THE COURT: There is a forensic file

17         for Miss Taylor.  Is there one forensic

18         file for her that's been discarded?

19                   MR. MESS:  Yes.

20                   When the exam was done pursuant to

21         Criminal Procedure Law 730, there is a

22         separate file created, and the file created

23         for Miss Taylor is no longer available.

24                   THE COURT: If doctors other than

25         Dr. Wang put notes in that file, they would

1    have been discarded too.

2            MR. MESSINA:  Anything that would

3    be related to that purpose, competency

4    evaluation, would end up in the "for file"

5    and that is gone.

6            THE COURT: So, any doctor who makes

7    notes with respect to the competency

8    evaluation, Dr. Wang and Dr. Pabon, are

9    gone.

10           MR. MESSINA:  That's correct, and,

11   in fact, they had created notes.  Whether

12   or not they said they did, I have no other

13   information regarding whether the other

14   physician did.

15           But, if he did and they were put in

16   the file, they are gone.

17           THE COURT: If I may, could we

18   see -- Dr. Thomas Pabon still works at

19   Elmhurst Hospital?

20           MR. MESSINA:  I am not certain.  He

21   would not be an employee of the hospital.

22   He would be an employee of the Mount Sinai

23   School of Medicine as all physicians of the

24   Elmhurst Hospital are, and he may still be

25   on site.  I can find that out.

**Proceedings**                    44

1              MR. MATTEI: Perhaps we can see if

2        he has any personal copy of his own notes.

3        Maybe he didn't put them in the forensic

4        file.

5              THE COURT: Perhaps you can.

6              MR. MATTEI:  Perhaps Mr. Messina

7        can ask.

8              THE COURT: Counsel, I am not going

9        to go on a fishing expedition for your

10       office. If you want to call the hospital,

11       call Dr. Pabon, whatever you want to do,

12       with respect to those particular notes, if,

13       in fact, they exist, my advise would be do

14       whatever you think is appropriate.

15              I am not going to order him to get

16       something that wasn't part of the original

17       order to show cause, and that had to do

18       with the forensic file at Elmhurst

19       Hospital.

20              Thank you. Let's bring in the

21       panel.

22              (Panel of prospective jurors enter

23       the courtroom.)

24              (The following discussion was held

25       at the side bar:)

1           THE COURT: Let the record reflect

2      we are having a side bar outside the

3      presence of the prospective panel.

4           I think Mr. Mattei knows this.

5      We've done this before. If a juror is

6      excused by the Court, if you have any

7      objection to that juror being excused, just

8      ask to approach and we will make that

9      objection outside the earshot of the jury,

10     just so you don't have to object to it in

11     front of the jury itself.

12          If I don't hear an objection, I

13     will assume there is no objection to that

14     juror being discharged.

15          Understood, Mr. Mattei? That is

16     the way we've done that before. Mr.

17     Renfroe, is that understood?

18          MR. RENFROE: Yes.

19          THE COURT: Any objection to that?

20          MR. RENFROE: No.

21          THE COURT: That way we don't have

22     to make our objection in front of

23     everybody. We can do it on the record if

24     you like, at the side bar or outside the

25     earshot of the jury, all right?

1            (In open Court:)

2            THE CLERK: Jurors, please rise.

3            (Whereupon, a panel of prospective

4       jurors were sworn by the Clerk of the

5       Court.)

6            THE COURT: Good afternoon, ladies

7       and gentlemen.  My name is Justice Robert

8       Collini.  I am going to be the judge that

9       presides over the trial that is about to

10      begin.

11           Some of you are about to be

12      selected as jurors in this case.  Turn off

13      all of you cell phones.  Turn them off if

14      you have them, okay?  Everybody make sure

15      they are all off.

16           In the next few minutes, I am going

17      to briefly explain what role I play in this

18      trial and what role you, as jurors, play.

19           Then we are going to determine

20      which of you are going to actually sit as

21      jurors in this case.

22           The trial that is about to be

23      commenced is a criminal action.  It is

24      entitled the People of the State of New

25      York against Taliyah Taylor who is called

1        the defendant.

2                This case involves allegations that

3        the defendant committed the crime of murder

4        in the second degree. We'll be working on

5        this case for a while longer today,

6        tomorrow afternoon at two o'clock,

7        Wednesday, I believe Thursday, but we will

8        see --we may or may not be working on

9        Thursday -- Friday, we will be working all

10       next week.

11               This case should take approximately

12       two weeks, from beginning to end.  The

13       following names are prospective witnesses,

14       or names that may appear during the course

15       of the trial.

16               Audrey Simon, Ignazio Giuffre,

17       Crystal Ann Sullivan, Anselmo Gadraj,

18       Vincent Cavalieri, Jeanette Cavalieri,

19       Jeffrey Hausman, Nicholas Swift, Derrick

20       White, Lisa Franklin Zaida, Howie Hoaglund,

21       Police Officer Robert Albano, Police

22       Officer William Bartel, Mercy T. Walsh,

23       Cheryl McQuicken, Police Officer Wogit,

24       Emanuel Saldivias, Detective Tony Racioppo,

25       Police Officer Adeni Zaparo, Ricardo

1    Corretjer, David Park, Detective John

2    Signorelli, Michael McGee, Dr. Kristen

3    Roman, Dr. Gregory Bunt, Dr. Miles

4    Schneider, Dr. Jose Casatian, Paul Barone,

5    Police Officer Terrance Hogan, Detective

6    investigator Michael Seminara, Phillip

7    Spitler, Dr. Otis Woikowski, Dr. Berrill,

8    Dr. Pabon, Dr. Clark, Lee Barnett, Barbara

9    Morgan, Dr. Titus Oakinola, Malia Roe,

10   Tricia Matthews, Dr. Richard Wang.

11            All of those people are probably

12   not going to be witnesses, but they are

13   names that you may hear during the course

14   of this trial.

15            This case involves allegations that

16   a crime was committed on October 18, 2006

17   at approximately 10:45 p.m. at Forest

18   Avenue at Samuel Place.

19            This trial is the process by which

20   we determine whether or not the charges and

21   allegations can be proven by sufficient

22   evidence.  In that process, those of you

23   who are selected as jurors and I as the

24   Judge perform separate functions.

25            As jurors, you are going to

1          determine whether or not the evidence that

2          you hear and see during the course of the

3          trial can establish the defendant's guilt

4          of the charges.

5               In order to do that, it will be

6          your job to evaluate that evidence at the

7          end of the trial and determine whether or

8          not what you have heard from the witnesses

9          and seen as exhibits is true; then what

10         that means.  That's called the finding of

11         facts.  That's the exclusive function of

12         the jury.

13              My role at the trial is to ensure

14         that you do your job in accordance with the

15         law.  I will explain to you what the law is

16         with respect to any issue that might arise

17         during the course of the trial.

18              The People in this case are

19         represented by the District Attorney of

20         Richmond County, Assistant District

21         Attorneys Mario Mattei and Janet Silvers.

22              (Rise and face the jury.)

23              THE COURT: The People will be

24         presenting evidence to you.

25              The defendant in this case is

1    represented by Mr. Christopher Renfroe.

2             (Rises and faces the jury.)

3             MR. RENFROE: Good afternoon,

4    ladies and gentlemen.

5             THE COURT: Mr. Jose Araujo.

6             (Rises and faces the jury.)

7             THE COURT: In every criminal case,

8    the burden of proving the charges rests

9    with the prosecution. The prosecution must

10   prove the defendant's guilt with respect to

11   each of the elements of the crimes charged

12   beyond a reasonable doubt.

13           That's because in every criminal

14   case, the defendant is presumed to be

15   innocent, and cannot be found guilty until

16   or unless the prosecution has proven the

17   charges beyond a reasonable doubt.

18           In our country, it is the accuser,

19   person who makes the accusation, who has an

20   obligation to prove that accusation. No

21   defendant is required to prove his or her

22   innocence.

23           Now, these terms, presumption of

24   innocence, reasonable doubt, burden of

25   proof will be defined in greater detail at

1       the end of the trial.  If you are selected

2       to serve as jurors, you will hear a more in

3       depth definition.

4               But, suffice it to say that since

5       the defendant is presumed to be innocent,

6       it follows that a defendant in a criminal

7       trial is not required to testify.  His or

8       her decision not to testify would not be a

9       factor which you can hold against the

10      defendant when you decide the case.

11              Now, in order to be considered as a

12      juror in this case, you must be free from

13      any and all bias and prejudice.

14              What that means is that you can't

15      allow personal beliefs about a race or a

16      group of people to cloud your judgment or

17      influence your decision.

18              In my opinion, it is more honorable

19      and it shows more courage for a potential

20      juror to tell me at the bench, or to tell

21      me at all they've had prior experiences

22      with members of a particular race or group

23      of people, and that they won't be able to

24      set those experiences aside during the

25      course of the trial.

1           If that's your situation, let me

2      know.  This applies to all areas of

3      potential bias.

4           In addition, there are members of

5      our community who don't believe that people

6      should be incarcerated for particular

7      offenses, or even prosecuted for those

8      offenses such as narcotics offenses, and

9      there are others who believe that the

10     criminal justice system discriminates

11     against one ethnic or racial group or

12     another.

13          If that is your opinion, let me

14     know.  These opinions don't necessarily

15     make you a bad person, but they will

16     exclude you from being a fair juror.

17          What we want to do is get a jury

18     that is not only free from bias and

19     prejudice, but free from being on a

20     political mission or crusade to support an

21     idea that they personally feel strongly

22     about.

23          If anyone has any of these issues,

24     it is your duty to let me know.  During the

25     course of this trial, we are going to hear

1          testimony from police officers.  It will be

2          your job to weigh, in other words, to judge

3          the testimony of police officers who appear

4          before you.

5               This means that you are going to

6          have to determine whether or not police

7          officer witnesses are telling you the truth

8          in whole, in part, or not at all.

9               Just as we exclude jurors who are

10         biased and prejudiced, there is no place in

11         this courtroom for someone who has a

12         preconceived notion about the truthfulness

13         of the police.

14               I know that there are people

15         because of their prior experiences with the

16         police or perhaps because they've heard

17         accounts from the media who believe that

18         all police officers are dishonest, they are

19         not worthy of your belief. If that is your

20         opinion, let me know.

21               Similarly, there are people who

22         have had positive experience with the

23         police.  A lot of people who have relatives

24         who are police, and they could never

25         envision a police officer ever lying or

1    making a mistake. If that's your opinion,

2    let me know. Police officers have to be

3    judged just like any other witnesses.

4           Serving on a jury is a vital

5    function for citizens under our system of

6    law. It is also a very great

7    responsibility and that is to accord the

8    defendant and the People a fair trial.

9           In order to do this, you must be

10   free from any preconceived notions or

11   sympathies that might prevent you from

12   returning a fair and just verdict based

13   solely on the evidence or lack of evidence

14   as its presented in the courtroom.

15          To help ensure this, our first

16   order of business is to conduct an

17   examination of you, the jurors. When I am

18   finished speaking, we are going to call out

19   the names of some of you that will be

20   seated in the jury box. I will ask you

21   some questions.

22          After that, the attorneys have a

23   very brief opportunity to ask some

24   questions also. The purpose of these

25   questions is going to be to determine

1         whether or not this is the right case for

2         you to sit on.

3              Most of you will not be selected

4         as jurors in this case.  Not being selected

5         will not be a reflection on you as either a

6         citizen or as an individual.  It would

7         simply be a determination by one or more of

8         the parties or by the Court that this

9         wasn't a good case for you to sit on.

10             At this point usually I tell you

11        how I feel about what you folks do when you

12        come into my courtroom to serve as jurors.

13        I have stopped doing that lately because I

14        just think that it's better if you make up

15        your own mind instead of listening to me.

16        But I guarantee you, after I have heard a

17        few of you, there is the possibility that I

18        will tell you how I feel about what you do

19        here.

20             I personally believe -- I will just

21        give you a few minutes, maybe less than

22        that -- I personally believe it's a great

23        honor to be a juror.  It's a great

24        responsibility but it's also a great honor.

25             I think that what society does in

1        this country, by allowing folks like you,

2        ordinary folks like you to come into my

3        courtroom or any courtroom like mine that

4        does criminal trials and allow you folks to

5        make a determination as to whether or not

6        someone in your community who is accused of

7        a crime is guilty or innocent of that

8        crime, that is a great honor to be allowed

9        to do that.

10              By doing that, what you do is you

11       guarantee the freedom of everybody in the

12       community that you live in.

13              You make sure that when someone is

14       accused of a crime, that they get a fair

15       and an honest trial, judged by ordinary

16       citizens just like you.

17              I can't imagine a greater honor

18       that a community can bestow upon its

19       citizens than allowing them to make these

20       important, truly important decisions.  But,

21       more than that, what you are doing, do is

22       you protect our freedom. You make sure that

23       it's not just folks like me who make

24       choices, people who sit in robes like this

25       who have black robes on who say whether

1          somebody is innocent or guilty.

2                    You do that.  You folks should be

3          proud to do this.  This is not only your

4          civic duty but it is a great responsibility

5          and it protects, like I said, it protects

6          the freedom of not only you but of your

7          children.

8                    It protects the freedom of your

9          spouses, of your relatives who live in

10         Staten Island.  It is a great honor.

11                   I get a little aggravated sometimes

12         when I see people who just don't want to be

13         bothered.  They want to let someone else

14         have that responsibility and they could

15         care less.  I think they don't understand

16         how important it is.  I guess sometimes

17         those folks just take the freedom that you

18         have for granted and they are the kind of

19         people who let other people protect their

20         freedom.

21                   This isn't a big deal.  I am not

22         asking anybody to go to Iraq.  I am just

23         asking you to sit with us for two weeks.

24         You are going to get paid for it too,

25         probably not as much as you make when you

1       work, but you are going to get paid, and

2       you just come in and you help us make a

3       really crucial decision in a very

4       responsible way.

5            I hope you will agree with that

6       when I ask you if you want to sit down and

7       work with us for a couple of weeks.

8            Now all we are going to do is ask

9       you questions.  So, all I am going to be

10      asking you now is whether or not you want

11      to sit down and have a few questions asked

12      to you.

13           I would hope that most of you would

14      at least let us do that before you say to

15      me I don't want to be here.  All right?

16      So, take that into consideration when we

17      call your name, please.  It will certainly

18      make me feel a lot better if you do that,

19      and just remember this is an honor to be

20      allowed to do this.  It is not an

21      imposition.  I know most of you folks think

22      it's just a great imposition on your life,

23      but if you don't do it, who is going to

24      protect your freedom?

25           In any event, I have already spoken

| | |
|---|---|
| 1 | too long. All right, at this point we are |
| 2 | going to call the names of twenty people |
| 3 | and they will be asked -- I am going to ask |
| 4 | you two questions.  When I am finished, you |
| 5 | will be asked to take a seat in the jury |
| 6 | box and then we will ask you some more |
| 7 | questions. |
| 8 | MR.  MATTEI:  Just one thing |
| 9 | quickly. |
| 10 | (A side bar discussion was held off |
| 11 | the record.) |
| 12 | THE COURT: Also one of the names |
| 13 | that you most likely will hear during the |
| 14 | course of this trial is Larry Simon.  Larry |
| 15 | Simon. |
| 16 | THE CLERK: Elias O. Akuredolua. |
| 17 | THE COURT: How are you, sir? |
| 18 | JUROR:  I am fine. |
| 19 | THE COURT: How do you feel today? |
| 20 | Feel good? |
| 21 | JUROR:  Yes. |
| 22 | THE COURT: Is there anything you |
| 23 | want to tell me about yourself that you |
| 24 | think would affect your ability to be fair |
| 25 | and impartial? |

1           JUROR: No.

2           THE COURT: Take seat number one.

3           THE CLERK: Elias, E L I A S O.

4       Akeredolua, A K E R E D O L U A.

5           Take seat number one.

6           THE CLERK: M I S E A E L Torres.

7           THE COURT: How are you, sir?

8           JUROR: I am doing all right.

9           THE COURT: How do you feel today?

10          JUROR: Very good.

11          THE COURT: Is there anything you

12      want to tell me about yourself that you

13      think would affect your ability to be fair

14      and impartial?

15          JUROR: No.

16          THE COURT: Take seat number two.

17          THE CLERK: M I S E A E L

18      T O R R E S.

19          John A. Rotundi.

20          THE COURT: Come up. How are you

21      today?

22          JUROR: I am good.

23          THE COURT: Is there anything you

24      want to tell me about yourself that you

25      think would affect your ability to be fair

 1              and imparti9al?

 2                         JUROR:  No.

 3                         THE COURT: Take seat number three.

 4              Thank you.

 5                         THE CLERK: First name John,

 6              J O H N,  middle initial A, last name

 7              Rotundi, R O T U N D I.

 8                         Marissa Rodriguez.

 9                         THE COURT: How are you doing,

10              ma'am?

11                         JUROR: Good.

12                         THE COURT: How do you feel today?

13                         JUROR:  Tired.

14                         THE COURT: You will get a good

15              night sleep tonight then.

16                         Is there anything you want to tell

17              me about yourself that you think may affect

18              your ability to be fair and impartial?

19                         JUROR:  No.

20                         THE COURT: Take seat number four.

21              Thank you, ma'am.

22                         THE CLERK: M A R I S A

23               R O D R I G U E Z, seat four.

24                Philomina Alonso.

25                         THE COURT: Come up.

1             How are you doing, ma'am?

2             JUROR:  Pretty good, thank you.

3             THE COURT: How do you feel today?

4             JUROR:  Good.

5             THE COURT: Is there anything you

6      want to tell me about yourself that you

7      think would affect your ability to be fair

8      and impartial?

9             JUROR:  No, not at all.

10            THE COURT: Thank you.

11            THE CLERK: F I L O M E N A

12       A L O N S O, seat five.

13            Art J. Miranda.

14            THE COURT: How are you, sir?

15            JUROR:  Okay.

16            THE COURT: How do you feel today?

17            JUROR:  Good.

18            THE COURT: Is there anything you

19      want to tell me about yourself that you

20      feel would affect your ability to be fair

21      and impartial?

22            JUROR:  No.

23            THE CLERK: Art J. Miranda,  A R T,

24      J.  M I R A N D A.  Seat 6.

25            Susan Saterparsa.

 1              THE COURT: How are you doing,

 2       ma'am?

 3              JUROR:  Okay.

 4              THE COURT: How do you feel today?

 5              JUROR:  Okay.

 6              THE COURT: Is there anything you

 7       want to tell me about yourself that you

 8       think would affect your ability to be fair

 9       or impartial?

10              JUROR:  No.

11              THE COURT: Take seat number seven.

12       Thank you, ma'am.

13              THE CLERK: S U S A N

14       S A T E R P A R S A.

15              Yago Valentina, Jr.

16              THE COURT: How are you?

17              JUROR:  Good.

18              THE COURT: How do you feel today?

19              JUROR:  Awkward.

20              THE COURT: Is there anything you

21       want to tell me about yourself that you

22       think would affect your ability --

23              JUROR: My experience for the Staten

24       Island, the first week I was arrested by

25       these cops.

1 |              THE COURT: Is that going to affect

2 |        your ability to be fair and impartial?

3 |              JUROR:  Especially since the

4 |        detective lied to me about a statement.

5 |              THE COURT:  I just asked the

6 |        question.  It is a yes or a no question.

7 |              JUROR:  Yes.

8 |              THE COURT: You wouldn't be able to

9 |        put that aside and judge this case on what

10 |        is involved in this case?

11 |              JUROR:  That is the only thing.

12 |              THE COURT: You can't put that

13 |        aside?

14 |              JUROR:  (No response.)

15 |              THE COURT: That is so --

16 |              JUROR:  Yeah, it's right there.

17 |              THE COURT: So you can't be fair any

18 |        more?

19 |              JUROR:  I don't think I would be.

20 |              THE COURT: You are excused.  Call

21 |        somebody else.

22 |              THE CLERK: Charles De Carlo.

23 |              THE COURT: How are you, sir?

24 |              JUROR:  Fine.

25 |              THE COURT: How do you feel today?

1          JUROR:  Fine.

2          THE COURT: Is there anything you

3    want to tell me about yourself that you

4    think would affect your ability to be fair

5    and impartial?

6          JUROR:  Not right now.

7          THE COURT: Take seat number eight.

8          THE CLERK: C H A R L E S

9     D E   C A R L O.

10         Lsi K. Ma.

11         THE COURT: How are you doing,

12   ma'am?

13         JUROR:  Good.

14         THE COURT: How do you feel today?

15         JUROR:  Tired.

16         THE COURT: You are tired too?

17         JUROR:  Yes.

18         THE COURT: Don't worry, after today

19   everybody gets a good night's sleep.

20         Is there anything you want to tell

21   me about yourself that you think would

22   affect your ability to be fair and

23   impartial --

24         JUROR:  No.

25         THE COURT: Take seat number nine,

1     thank you, ma'am.

2                 THE CLERK: L S I    K.    M A.

3                 THE COURT: How are you doing, sir?

4                 JUROR:   How is it going?

5                 THE COURT: How do you feel today?

6                 JUROR:   Tired.

7                 THE COURT:   Everybody is tired

8     today.   Long weekend watching the Giants

9     game, I guess.

10                Is there anything you want to tell

11    me about yourself that you think would

12    affect your ability to be fair and

13    impartial?

14                JUROR:   I have to be honest, when

15    you say murder, definitely makes me look at

16    her in a different way, I'd be honest.

17                THE COURT: So you won't be fair?

18                JUROR:   I don't think so, no.

19                THE COURT: You don't think you will

20    be, why?

21                JUROR:   I don't know.   As soon as

22    you say murder --

23                THE COURT: Then all of a sudden you

24    are not going to be fair? You will let

25    somebody else do it?

1          JUROR:  I know someone who was

2     murdered.  Yes.

3          THE COURT:  That is not  the

4     question.  Does that have anything to do

5     with what we are doing here?

6          JUROR:  Do I think I could be fair?

7     No.

8          THE COURT: You don't think you

9     could be fair?

10          JUROR:  No.

11          THE COURT: Just because it is a

12     murder case?

13          JUROR:  Yes.

14          THE COURT: You are excused.

15          THE CLERK: Hiu L.  Loli.

16          THE COURT: How are you, ma'am?

17          JUROR:  Good.

18          THE COURT: How do you feel today?

19          JUROR:  Good.

20          THE COURT:  Is there anything you

21     want to tell me about yourself that you

22     think would affect your ability to be  fair

23     and impartial?

24          JUROR:  No.

25          (PAUSE.)

1       THE COURT: Take seat number ten.

2       THE CLERK:  Hiu L. Loli.

3       THE COURT: How are you?

4       THE CLERK: Alex S. Chan, A L E X

5   S.   C H A N.

6       JUROR:  Good.

7       THE COURT: How do you feel today?

8       JUROR:  All right.

9       THE COURT: Is there anything you

10   want to tell me about yourself that you

11   think would affect your ability to be fair

12   and impartial?

13       JUROR:  Yes.  I had a friend of

14   mine who was in high school was also

15   murdered.  I --

16       THE COURT:  Does this have anything

17   to do with that?

18       JUROR:  Well, it's somewhere,

19   similar situation.

20       THE COURT: But the person is

21   presumed to be innocent.  Do you know what

22   job the jurors do?  The jurors sit in the

23   box, they watch the witnesses come in.

24       They look at the exhibits and all

25   the evidence and they decide whether or not

1        it's true, and then what it means.  That's

2        what they do.

3                JUROR:  I don't believe I can put

4        that aside.

5                THE COURT: You don't think you'd be

6        able to do that?  When people talk to you

7        in your everyday life and you make

8        judgments as to whether or not they are

9        telling the truth or not, are you capable

10       of doing that?

11               JUROR:  I don't feel that I will be

12       completely fair in this --

13               THE COURT: You are not capable of

14       doing it?

15               JUROR:  No, sir.

16               THE COURT: Of being honest and

17       fair.  All right, you can leave.

18               THE CLERK: Debra L. Tursi.

19               THE COURT: How are you doing?

20               JUROR:  All right.

21               THE COURT: How do you feel today?

22               JUROR:  Tired.

23               THE COURT:  Is there anything you

24       want to tell me about yourself that you

25       think would affect your ability to be fair

1     and impartial?

2          JUROR: I got jumped by six black

3     girls sitting in the back of the bus.

4          THE COURT: How long ago was that?

5          JUROR:  Five years ago.

6          THE COURT: That is going to cloud

7     your judgment for the rest of your life?

8     You are going to have to work on that.  You

9     are excused.

10         THE CLERK: Alexander Rosa.

11         THE COURT: How are you sir?

12         JUROR:  Good.

13         THE COURT: How do you feel today?

14         JUROR:  Good.

15         THE COURT: Is there anything you

16    want to tell me about yourself that you

17    think would affect your ability to be fair

18    and impartial?

19         JUROR:  No.

20         THE COURT: Take seat number eleven.

21    Thank you very much, sir.

22         THE CLERK: A L E X A N D E R

23    R O S A.  Seat eleven.

24         Laura C. Pollack.

25         THE COURT: How are you doing,

1       ma'am?

2                   JUROR:  All right.

3                   THE COURT: How do you feel today?

4                   JUROR:  Okay.

5                   THE COURT: Is there anything you

6       want to tell me about yourself that you

7       think would affect your ability to be fair

8       and impartial?

9                   JUROR:  Not really.  I take care of

10      four granddaughters, just two weeks might

11      be distracting.  They have no one to watch

12      them.

13                  THE COURT: You will work for us for

14      two weeks.

15                  JUROR:  Then what do my daughters

16      do?  They work.  There are two of them

17      under three.  One is two, one is three.

18                  THE COURT: There is nobody else

19      just for two weeks?

20                  JUROR:  No.

21                  THE COURT: That you can't work out

22      something with these folks?

23                  JUROR: No.  They had to scramble

24      just for today.  I don't think I could put

25      everything into it.

1              THE COURT: You are excused.

2              THE CLERK: Patricia A. Varriano.

3              THE COURT: How are you doing?

4              JUROR:  Fine.

5              THE COURT: How do you feel today?

6              JUROR:  Fine.

7              THE COURT: Is there anything you

8         want to tell me about yourself that you

9         think would affect your ability to be fair

10        and impartial?

11             JUROR:  To be honest with you, only

12        the two week --

13             THE COURT: No, I want you to lie to

14        me.

15             JUROR:  Only the two week timeframe

16        because between work and my son, he comes

17        home, does latchkey, so --

18             THE COURT: We usually finish about

19        five o'clock.

20             JUROR:  I know, but if I don't talk

21        to him by 2:30, I am like a nervous wreck.

22             THE COURT: You will have an

23        opportunity to talk to him.

24             JUROR: Also, like I said with work,

25        I don't know how far they pay you and --

1          THE COURT: Who do you work for?

2          JUROR: Global Aerospace Insurance,

3     New Jersey.

4          THE COURT: I don't know what their

5     policy is with respect to paying you, but

6     like I said, you won't get paid for here.

7          JUROR:  Forty dollars isn't going

8     to-- definitely going to cut my salary.

9          THE COURT: Why don't you stick

10    around with us?  Find out what the

11    situation is with whether they pay or not.

12          Take seat -- otherwise, you could

13    be fair and impartial?

14          JUROR:  Yes.

15          THE COURT: Take seat number twelve.

16          THE CLERK: Name P A T R I C I A,

17    middle initial A, last name V A R R I A NO.

18          Seat 12.

19          Matthew Weiss.

20          THE COURT: How are you doing, Mr.

21    Weiss?

22          JUROR:  All right.

23          THE COURT: How do you feel today?

24          JUROR:  I feel okay.

25          THE COURT: Is there anything you

 1     want to tell me about yourself that you

 2     think would affect your ability to be fair

 3     and impartial?

 4              JUROR:  Yes, I do.  I have a police

 5     bias due to a prior arrest.

 6              THE COURT: So what happened?

 7              JUROR:  I was busted for possession,

 8     and the officer pulled the switch on me.

 9              THE COURT: He --

10              JUROR:  He pulled a bait and switch

11     and tried to get a felony.

12              THE COURT: So you are going to hold

13     that against all police officers, all the

14     time?

15              You are not going to be able to

16     judge a police officer witness the same way

17     you would somebody else.

18              Honestly, I don't think so.  If I

19     didn't have a family member who was a

20     police officer, I would not have gotten out

21     of that situation, which --

22              THE COURT: The family member you

23     have who is a police officer, you wouldn't

24     think is fair?  That is a family member.

25              JUROR:  I would have been thrown

Case 1:14-cv-01402-ERK-LB  Document 6-4  Filed 08/12/14  Page 75 of 164 PageID #: 867

1       out of the court for that, anyway.

2                    THE COURT: For what?

3                    JUROR:  If I said --

4                    THE COURT: Basically you don't want

5       to be here?

6                    JUROR:  I didn't say that.  I told

7       you I don't want to be here because of --

8                    THE COURT:  That seems like a

9       contrived excuse.  I don't think it is that

10      hard to judge someone.  I just told

11      everybody what people do as jurors.

12                   They make decisions as to whether

13      or not someone is telling the truth.  They

14      do it honestly and fairly.  You are telling

15      me you can't do that?

16                   JUROR:  When a police officer risks

17      my life and my future based on --

18                   THE COURT: You are excused.  Go.

19      Go. Go.

20                   If you don't want to be here, just

21      say I don't want to be here.  I prefer

22      that.  It is more honest, and I will take

23      it into consideration.

24                   THE CLERK: Nicholas Surowiec.

25                   THE COURT: Is there anything you

1   want to tell me about yourself that you

2   think would affect your ability to be fair?

3                JUROR:  I work graveyard shift

4   Monday through Saturday.  I get out Sunday

5   mornings.

6                THE COURT: Take a seat.  Number 13.

7                THE CLERK: N I C H O L A S, last

8   name S U R O W I E C, seat 13.

9                THE CLERK: Anthony R. Cassieri.

10               JUROR:  Doing better.

11               THE COURT: Is there anything you

12   want to tell me about yourself that you

13   think would affect --

14               JUROR:  Two weeks is a long time

15   for me.

16               THE COURT: What do you do?

17               JUROR:  Funeral director.

18               THE COURT: It may be less than two

19   weeks. Take seat number fourteen.

20               THE CLERK: First name A N T H O N Y

21   middle initial R, last name C A S S I E R I

22   seat number fourteen.

23               Cynthia Dow.

24               THE COURT: How are you, ma'am?

25               JUROR:  I am okay.

1           THE COURT: Is there anything you

2    want to tell me about yourself that you

3    think would --

4           JUROR:  I am sorry.  I don't

5    understand a little bit.

6           THE COURT: I have to ask the

7    question first.  Do you not understand what

8    I am saying?  Do you understand English?

9           JUROR:  I am --

10          THE COURT: What do you do for a

11   living?

12          JUROR: I am at home.

13          THE COURT: You don't speak English

14   well enough to help us?

15          JUROR:  (No response.)

16          THE COURT: You can go, ma'am.  You

17   can leave.

18          THE CLERK: Christopher Warren.

19          THE COURT: How are you doing?

20          JUROR:  Good.  How are you, sir?

21          THE COURT: Is there anything you

22   want to tell me about yourself that you

23   think would affect your ability to be fair

24   or impartial?

25          JUROR:  My whole family are police

1    officers.

2              THE COURT: So you won't judge

3    police officers fairly?

4              JUROR:  I never had a problem with

5    a cop before --

6              THE COURT: That is not the

7    question.

8              JUROR:  I am saying, I don't have a

9    negative --

10             THE COURT: Stop. Stop.

11             JUROR:  Yes.

12             THE COURT: If a police officer

13   takes the stand, are you going to judge

14   them fairly?  Will you be fair to them?

15             JUROR: Would I be fair to them?

16             THE COURT: Yes.

17             JUROR: I can be fair to the police

18   officer, yes.  Would I be fair to the young

19   person?  I am not sure.

20             THE COURT: So anyone who isn't a

21   police officer you won't be fair to?  I

22   don't understand what you are saying.  I

23   understand what you told me,  just don't

24   understand what you are saying.

25             You have police officers who are

1    relatives?

2              JUROR:  Yes.

3              THE COURT: So that should

4    disqualify you from being on a jury?

5              JUROR:  No.  I just don't think

6    that's -- to be totally honest with you, I

7    don't think it would be fair --

8              THE COURT: I asked you a question.

9              JUROR:  No.

10             THE COURT: That would disqualify

11   you from being on a jury because --

12             JUROR:  Yes, I would use somebody

13   else -- it is not in the way that you are

14   looking at it.

15             THE COURT: Yeah, it is.  You want

16   to know why? Because what we expect people

17   to do is to come in here and do their civic

18   duty.  By their civic duty I mean come in

19   here and be honest and be fair.

20             JUROR: I am being honest. If I

21   didn't want to be here, I would tell you

22   straight up.

23             THE COURT: But you are telling me

24   you can't be honest and fair because police

25   officers are going to testify?

1             JUROR:  It has nothing to do with

2        the testifying of the officer. It has to do

3        with the situation of what you explained to

4        me earlier, of what the case is all about.

5             THE COURT: I didn't tell anyone

6        what the case is about.

7             JUROR:  Yes, you did.  You said it

8        was a murder case.

9             THE COURT: I said what the

10       allegations are.  That is the charge.  No

11       one knows any of the facts of this case or

12       what it's about.

13            JUROR:  I understand that.

14            THE COURT: No one knows what the

15       case is about.  You just know that it's one

16       thing.  What I am trying to say to you is

17       it's your duty to be a juror.

18            JUROR:  Four years ago I was a

19       juror.

20            THE COURT: You don't want to be one

21       now?

22            JUROR:  I am not --

23            THE COURT: You were fair to be one

24       then, but you are not fair any more?

25            JUROR:  In the same situation, I

1        wouldn't be on the same case I was because

2        now I have --

3                THE COURT: You are excused.

4                Tell me you don't want to be here.

5        It is a lot easier.

6                THE CLERK: Mary Ward.

7                THE COURT: Hi Mary, How are you?

8                JUROR:  Okay.

9                THE COURT: How are you feeling

10       today?

11               JUROR:  Good.

12               THE COURT: Is there anything you

13       want to tell me about yourself that you

14       think would affect your ability to be fair

15       and impartial?

16               JUROR:  No.

17               THE COURT: Good for you, Mary.

18               Take seat number fifteen.

19               THE CLERK: First name M A R Y, last

20       name W A R D.  Seat fifteen.

21               Kenneth P. Morris Jr.

22               THE COURT: How are you, sir?

23               JUROR:  All right.

24               THE COURT: How do you feel today?

25               JUROR:  Fine.

1           THE COURT: Is there anything you

2    want to tell me about yourself that you

3    think would affect your ability to be fair

4    and impartial?

5           JUROR:  No.

6           THE CLERK: First name K E N N E T H

7    P.   M O R R I S   J R.

8           Rose S. Kelly.  No answer.

9           Michael O. Wood.

10          THE COURT: How are you, Mr. Wood?

11          JUROR:  Doing fine.

12          THE COURT: How do you feel today?

13          JUROR:  Feeling good.

14          THE COURT: Is there anything you

15   want to tell me about yourself that you

16   think would affect your ability to be fair

17   and impartial?

18          JUROR:  No.

19          THE COURT: Take seat number

20   seventeen.  Front row.  Thank you, Mr.

21   Wood.

22          THE CLERK: First name M I C H A E L

23   middle initial O, last name Wood, W O O D.

24          Donald Buttermark.

25          THE COURT: How are you, sir?

1              JUROR:  Good.

2              THE COURT: How do you feel today?

3              JUROR:  Great.

4              THE COURT: Is there anything you

5        want to tell me about yourself that you

6        think would affect your ability to be fair

7        and impartial?

8              JUROR:  No.

9              THE COURT: Take seat number

10       eighteen.  Thank you.

11             THE CLERK: First name D O N A L D

12       last name B U T T E R M A R K.  Seat

13       eighteen.

14             John M. Urrico.

15             THE COURT: How are you, sir?

16             JUROR:  All right.

17             THE COURT: How do you feel today?

18             JUROR:  Good.

19             THE COURT: Is there anything you

20       want to tell me about yourself that you

21       think would affect your ability to be fair

22       and impartial?

23             JUROR: No.

24             THE COURT: Take seat number

25       nineteen.  Thank you very much.

1        THE CLERK: First name J O H N   M.

2    U R R I C O.

3        Susan M. Walsh.

4        THE COURT: How are you, Miss Walsh?

5        JUROR:  Good.

6        THE COURT: How do  you feel today?

7        JUROR:  Good.

8        THE COURT: Is there anything you

9    want to tell me about yourself that you

10   think would affect your ability to be fair

11   and impartial?

12       JUROR:  No.

13       THE COURT: Take seat number twenty.

14   Thank you very much.

15       THE CLERK:  S U S A N, middle

16   initial M, last name W A L S H.

17       Of those of you who have sat down,

18   before I say anything else, I want to thank

19   you because you didn't try to get out of

20   jury service.  You said that you would be

21   fair and you want to work with us, and for

22   that you should be very proud of

23   yourselves.

24       It is very important that folks

25   like you are willing to give up a small

1       portion of your time when called upon to

2       serve your community in a vital and

3       important way.

4                  It is important that we have people

5       like you in the community.  Like I said,

6       you should be proud of yourselves for that.

7                  Now, there were a few of you who

8       had issues.  Who are they?

9                  What was your issue, ma'am?

10                 JUROR:  With reference to my job

11      and my son.

12                 THE COURT: Tell me it again.

13                 JUROR:  With reference to my job, I

14      don't know how long they are paying me.  I

15      am the sole support of my son.

16                 THE COURT: You said you were going

17      to find out for us.

18                 JUROR:  My son comes home latchkey.

19                 THE COURT: We are going to find out

20      about the work because that happens all the

21      time anyway, whether you are here or not.

22      That doesn't change whether you are here or

23      not, your son is coming home.

24                 JUROR:  No.  Usually I am home

25      about a quarter after four.

1      THE COURT: But that doesn't change

2      whether you work with us or not, so why

3      don't we do this, can we put her card aside

4      and you will come back tomorrow and tell us

5      whether or not that would affect your

6      ability to work with us,

7      THE CLERK: What number is that,

8      your Honor?

9      THE COURT: Twelve.

10      We will put somebody else in that

11      seat for now. Miss Varriano.  Any

12      objection, counsel?

13      MR. RENFROE:  No objection.

14      MR. MATTEI:  No objection.

15      THE COURT: Take your seat in the

16      audience again.  You will come back today

17      and tell us about that tomorrow.

18      THE CLERK: Berta G. Gonzalez.

19      THE COURT: How are you, Miss

20      Gonzalez?

21      JUROR:  All right.

22      THE COURT: How do you feel today?

23      JUROR:  All right.

24      THE COURT: Is there anything you

25      want to tell me about yourself that you

 1          think would affect your ability to be fair

 2          and impartial?

 3                  JUROR:  No.

 4                  THE COURT: Take seat number twelve.

 5          Thank you very much, Miss Gonzalez.

 6                  THE COURT: What was your problem?

 7                  JUROR:  I work graveyard shift.  I

 8          am coming off in the morning.  I don't want

 9          to be rude and fall asleep in your

10          courtroom.

11                  THE COURT: What time do you go in?

12                  JUROR:  I go in eleven o'clock

13          tonight.  Eleven to seven in the morning.

14                  THE COURT: We usually finish around

15          four and five.

16                  JUROR:  By the time I get out of

17          the hall, it is nine o'clock.  Takes about

18          45 minutes --

19                  THE COURT: Who do you work for?

20                  JUROR:  I work for Long Island

21          Railroad.

22                  THE COURT: Then tell them to give

23          you time to be on a jury.  You will tell

24          them --

25                  JUROR:  If I don't show up, I don't

1     get paid.

2                THE COURT: Tell them you are on

3     jury duty, all right?

4                JUROR:  Yes.  I will be subject to

5     call --

6                THE COURT: That is okay.  You are

7     staying with us.  Ma'am, you are staying

8     with us.  You are staying with us too.  You

9     are staying with us too.

10               All right.  Those are not good

11    excuses.  Everybody works.  That's not a

12    good excuse to not work with us.

13               All right.  I have a couple of

14    questions for everybody as a whole.

15               Have any of you read or heard about

16    any press accounts of this case?

17               If you have, raise your hand.

18    Anybody?

19               Does anybody in this group have

20    anyone who is close to them, either a

21    family member or friend, who've

22    experienced, who's had experiences with

23    mental illness?

24               Say your name.

25               JUROR:  Marissa Rodriguez.

1           THE COURT: Say the nature of the

2       problem.

3           JUROR:  My sister has mental

4       illness.

5           THE COURT: What is the situation?

6           JUROR:  She recently was

7       transferred to a group home.

8           THE COURT: To a group home because

9       of her mental illness?

10          JUROR:  Yes.

11          THE COURT: Thank you.  Who is next?

12          JUROR:  My wife takes care of her

13      mother.  She has mental illness.

14          THE COURT: What is the matter with

15      her?

16          JUROR:  She tried to commit

17      suicide.

18          THE COURT: Is she currently home --

19          JUROR:  She is home.  My wife goes

20      back and forth to monitor medication.

21          THE COURT: Make sure she takes her

22      medication?

23          JUROR:  A whole bunch.

24          THE COURT: Who else?  Say your

25      name.

1         JUROR: Eliza Sack. My mother's

2    cousin.

3         THE COURT: What is the matter with

4    your mother's cousin?

5         JUROR: Schizophrenia.

6         THE COURT: She takes medication for

7    that?

8         JUROR: Yes, she does.

9         THE COURT: Who else? Go ahead, say

10   your name.

11        JUROR: John Rotundi. My sister

12   has mental illness.

13        THE COURT: What is the matter with

14   her?

15        JUROR: I know for a fact that she

16   has OCD. I know OCD is not considered a

17   mental illness. I don't know what exactly

18   she has. I know that she was recently

19   institutionalized for something.

20        I am going to be honest with you.

21   I don't know what it is.

22        THE COURT: Anyone else? Say your

23   name.

24        JUROR: Alexander Rosa. My

25   sister-in-law is clinically depressed and

1     committed suicide in May.

2             THE COURT: She committed suicide?

3             JUROR:  In my house, yes.

4             THE COURT: Was she being treated

5     for mental illness before that?

6             JUROR:  Only for one month.

7             THE COURT: And then she committed

8     suicide.  I am sorry to hear that, but

9     thank you for telling us.

10            Ma'am?

11            JUROR:  Yes, my name is Mary Ward.

12     My daughter is clinically depressed and she

13     also takes medication.

14            THE COURT: Anybody else?  Thank you

15     very much.

16            Has anyone ever been on a jury

17     before?

18            Say your name.

19            JUROR:  Ken Morris.

20            THE COURT: What kind of case?

21            JUROR:  I was on a grand jury.

22            THE COURT: All right.  This is very

23     different than a grand jury.

24            If you are selected as a juror in

25     this case, you are going to have to accept

1      the law as I give it to you, whether you

2      agree with it or not.  It is different than

3      grand jury.

4                 Are you going to be able to do

5      that?

6                 JUROR:  Yes.

7                 THE COURT: Name?

8                 JUROR:  Philomina Alonso.

9                 THE COURT: Are you going to be able

10     to accept the law --

11                JUROR:  No problem.

12                THE COURT: Anybody else been on a

13     jury before?

14                Go ahead, say your name.

15                JUROR:  Alexander Rosa.

16                THE COURT: How long ago?

17                JUROR:  Fifteen years ago.

18                THE COURT: What kind of case was

19     it?

20                JUROR:  Criminal, wiretap.

21                THE COURT: Did they reach a

22     verdict?  Don't tell me what it was.   Did

23     they reach a verdict in that case?

24                JUROR:  Yes.

25                THE COURT: Who is next?

1          JUROR: Donald Buttermark.

2    Malpractice.

3          THE COURT: Civil case?

4          JUROR:  Malpractice.

5          THE COURT: Civil case, how long ago

6    was that?

7          JUROR:  Six years ago, seven years

8    ago.

9          THE COURT: Did they reach a

10   verdict?

11         JUROR:  Yes.

12         THE COURT: Thank you.  You can sit

13   down.

14         You don't have to get up when you

15   talk to me.  That's all right.

16         JUROR:  Michael Wood.  I worked two

17   years ago, Federal Jury, two years ago.

18         THE COURT: Were you selected for

19   the jury?

20         JUROR:  Yes.

21         THE COURT: Was it a criminal case?

22         JUROR :  Yes.

23         THE COURT: Did they reach a verdict

24   in that case?

25         JUROR:  Yes.

 1          THE COURT: Thank you.  Anybody else

 2      we didn't talk about?

 3          Has anybody in this group, any of

 4      your friends, close friends or family

 5      members who have had legal training, been

 6      employed in a lawyer's office, judges,

 7      lawyers, paralegals, people like that?

 8          Anybody?  Raise your hand if that's

 9      the case.  We'll start with you, ma'am.

10          JUROR:  Mary Ward.

11          THE COURT: That's the next

12      question, that is not this question.

13          It says do you know any lawyers,

14      judges, paralegals, people like that?

15      Anybody.

16          JUROR:  Who we know?

17          THE COURT: Close friend or family

18      member.

19          Go ahead, state your name.

20          JUROR:  Charles De Carlo.  Not that

21      it is as relationship.  My next door

22      neighbor is a court officer.

23          THE COURT: That is the next

24      question.  We are not there yet.

25          Lawyers, judges or paralegals.

1       What is your name?

2                  JUROR:  Hiu Loli.  I work in a law

3       firm before so I still keep in touch with

4       my boss and co workers, and --

5                  THE COURT: If you are selected as a

6       juror in this case, you can't talk to your

7       old boss about the case until after the

8       case is over, okay?

9                  JUROR:  Yes.

10                  THE COURT: Are you going to be able

11       to do that?  You can't talk to him about

12       the case, all right?

13                  JUROR:  Okay.

14                  THE COURT: Say your name.

15                  JUROR:  Mary Gonzalez.  My husband

16       is a lawyer.

17                  THE COURT: What kind of law?

18                  JUROR:  Corporate and taxation.

19                  THE COURT: Even though they don't

20       practice criminal law, you cannot discuss

21       the case with him during the course of the

22       trial.

23                  Are you going to be able to do

24       that?  You can tell him you are on jury

25       duty.  You can't talk about the facts of

1      the case.  That is an order, that is not

2      negotiable.

3                JUROR:  Yes.

4                THE COURT: Also, you are going to

5      have to take an oath to accept the law as I

6      give it to you, whether you agree with it

7      or not.

8                Are you going to be able to do

9      that?

10               Anybody else?

11               JUROR:  Susan Walsh.  My boss is a

12     lawyer, but out in California.

13               THE COURT: They don't even know the

14     law in California, so it doesn't count.

15               JUROR:  He is able to practice in

16     New York also.  He is real estate.

17               THE COURT: He is a real lawyer

18     then.

19               If you are selected as a juror in

20     this case, you are going to have to take an

21     oath to accept the law as I give it to you,

22     whether you agree with it or not.

23               Are you going to be able to do

24     that?

25               JUROR:  Yes.

1              THE COURT: Anybody else?

2              JUROR: John Urrico.  Just a friend

3      of mine and my wife's.

4              THE COURT: If you are selected as a

5      juror in this case, you are going to take

6      an oath to accept the law as I give it to

7      you, whether you agree with it or not.

8              Can you do that?

9              JUROR: Yes.

10             THE COURT: You can't talk to folks

11     about that case until it is over.

12             Does anybody have a family member

13     or close friend employed in law enforcement

14     who is police, Court, law enforcement?

15             JUROR: Philomina Alonso. My nephew.

16             THE COURT: What is the name?

17             JUROR:  I know the names.  That is

18     why I have to ask you.  He is retired in

19     Florida.

20             THE COURT: Who is that?

21             JUROR:  My nephew.

22             THE COURT: If you are selected as a

23     juror in this case, are you going to be

24     able to judge police officer testimony the

25     same way you would any other witness?

```
 1              In other words, are you going to be

 2         able to judge them fairly, that's the

 3         question.

 4              JUROR:  Yes.

 5              THE COURT: You are going to be able

 6         to do that?

 7              JUROR:  Yes.

 8              THE COURT: Thank you very much.

 9              Who is next?

10              You have a correction officer?

11              JUROR:  Yes, my next door neighbor.

12              THE COURT: Court officer?

13              JUROR:  Yes.

14              THE COURT: Are you going to be able

15         to judge police officer testimony fairly?

16              JUROR:  I guess.

17              THE COURT: I need a yes or a no.

18              JUROR:  Yes.

19              THE COURT: Anybody else?  Go ahead,

20         number one.

21              JUROR:  Distant relative.

22              THE COURT: You have distant --

23              JUROR:  Yes.

24              THE COURT: Who is a police officer?

25              JUROR:  Yes.
```

**Jury Selection** 99

1      THE COURT: Are you going to be able

2    to judge police officers fairly?

3      JUROR:  Sure.

4      THE COURT: Ma'am, say your name.

5      JUROR:  My name is Mary Ward.  I

6    have a friend in church.  He is a

7    correction officer.

8      THE COURT: Are you going to be able

9    to judge police officers fairly?

10      Are you going to be fair to police,

11    yes or no?

12      JUROR:  Yes.

13      THE COURT: Any body else? Who is

14    next?

15      JUROR: Anthony Cassieri, nephew is

16    a police officer.

17      THE COURT: Are you going to be able

18    to judge police officers fairly?

19      JUROR:  Yes.

20      THE COURT: Next.

21      JUROR:  Mary Ward.

22      JUROR: My son --

23      THE COURT: Are you going to be able

24    to judge police officers fairly?

25      JUROR:  Yes.

1              THE COURT: Who is next?  Who else?

2              JUROR:  John Urrico.  I have a lot

3         of cops as friends.

4              THE COURT: Are you going to be able

5         to judge police officers the same way you

6         would any other witness?

7              JUROR:  Yes.

8              THE COURT: In other words, fairly

9         and impartially.

10             JUROR:  Yes.

11             THE COURT: Next.

12             JUROR:  Donald Buttermark.

13             Two nephews, lot of friends.

14             THE COURT: Are you going to be able

15        to judge police officers the same way you

16        would any other witness, fairly and

17        impartially?

18             JUROR:  Yes.

19             THE COURT: All right.

20             JUROR:  Mr. Morris, police officer.

21             THE COURT: Are you going to be able

22        to judge police officers fairly?

23             JUROR:  Yes.

24             THE COURT: Go ahead.

25             JUROR:  Ken Morris.  I have a first

1       cousin and quite a few friends.

2              THE COURT: Are you going to be able

3       to judge police officers fairly and

4       impartially?

5              JUROR:  My neighbors, both are good

6       friends.

7              THE COURT: Are you going to be able

8       to judge police officers fairly and

9       impartially?

10             JUROR:  Yes.

11             THE COURT: Anybody I missed?

12             JUROR:  Mark Wood.  Friends both

13      corrections and police.

14             THE COURT: Are you going to be able

15      to judge police officers fairly and

16      impartially?

17             JUROR:  Yes.

18             THE COURT: Everybody knows police

19      officers in Staten Island.  It is not about

20      knowing police officers, it is about

21      whether or not you can step back and judge

22      them in the same way you would any other

23      witness.

24             Police officers tell the truth,

25      they sometimes don't.  They sometimes make

1       mistakes, just like everybody else.

2                    So, when they come in and testify,

3       can you judge them just like anybody else?

4                    You folks all said that you could

5       do so.  I really appreciate that.  That is

6       important.

7                    Has anybody here had a family

8       member or close friend who's been the

9       victim of a crime?

10                   Go ahead.  Say your name.

11                   JUROR: Miseael Torres.

12                   My wife was assaulted with a gun.

13                   THE COURT: Assaulted with a gun?

14                   JUROR:  Yes.

15                   THE COURT: You would be able to put

16      that aside and judge this case on the facts

17      in this case?

18                   JUROR:  Yes.

19                   THE COURT: Who is next?  Ma'am?

20                   Somebody in the first row?  Go

21      ahead.

22                   JUROR:  Juror number nine.  My wife

23      was attacked when she was a young girl.

24                   THE COURT: Was she your wife then?

25                   JUROR:  No.  She is my wife now.

1           THE COURT: Did you know her when

2      she was attacked?

3           JUROR:  No, a couple of years

4      later.

5           THE COURT: Is there anything about

6      that situation that would be such that you

7      wouldn't be able to be fair in this case?

8           JUROR:  Yes.

9           THE COURT: You didn't even know her

10     then.  How is it going to affect you?

11          JUROR:  Because it still affects

12     her now.

13          THE COURT: But it is you we are

14     talking about.

15          JUROR:  I know but I have to live

16     with her.

17          THE COURT: Are you serious that

18     it's going to affect you, something that

19     happened to your wife before you even know

20     her is going to affect whether you are

21     going to be fair in this case?

22          JUROR:  If I answer your question,

23     no.  But if you know what I have done, what

24     I have done in the past, where I work, then

25     you would understand.

1               THE COURT: That is --

2               JUROR:  Right now to answer your

3       question, no.

4               THE COURT: That's what we want to

5       know, whether you can be fair.  We want

6       people who can be fair.  That is what we

7       are looking for.  Thank you very much.

8               Who is next?

9               JUROR:  My name is John Rotundi.

10      My father had been robbed, I believe, three

11      times.

12              THE COURT: Nobody says that these

13      aren't things that can affect people.  They

14      are certainly things that can affect

15      people.

16              I want to know if you can put that

17      aside and judge this case based on the

18      evidence in this case?

19              JUROR:  Yes.

20              THE COURT: Are you going to be able

21      to do that?

22              JUROR:  Yes.

23              THE COURT: Anybody else?  Who is

24      next.

25              JUROR:  Donald Buttermark.

1            There is a case pending right now,

2       a very good friend of mine was the victim

3       and his wife was a friend of mine --

4            THE COURT: Are you going to be able

5       to put that aside and judge this case --

6            JUROR:  Yes.

7            THE COURT: Who is next?

8            JUROR:  Ken Morris.  My nephew was

9       assaulted just a few months ago, last

10      September, beginning of school.

11           THE COURT: Is he okay?

12           JUROR:  No.

13           THE COURT: What is the matter with

14      him?

15           THE COURT: He is mentally screwed

16      up from it, you know, but he is doing

17      better.

18           THE COURT: Are you going to be able

19      to put that aside --

20           JUROR:  Yes, I can.  Yes.

21           THE COURT: Thank you very much.

22      Good job.

23           Next?  Anybody else?  All right.

24           Anybody, close friend or family

25      member been arrested or had a fight with

**Jury Selection**                    106

```
 1      the police?
 2               Raise your hand.  Been arrested?
 3               JUROR:  My father.  Charles De
 4      Carlo.  My father.
 5               THE COURT: What happened with your
 6      father?
 7               JUROR:  He was mistakenly
 8      identified in an altercation with an off
 9      duty officer.  He was arrested.
10               THE COURT: Are you going to be able
11      to put that aside and be fair and honest in
12      this case?
13               JUROR:  I am going to try.
14               THE COURT: Yes or no?
15               JUROR:  Yes.
16               THE COURT: Anybody else?  Arrested?
17      All right.   Anybody ever testify in a
18      legal matter? Anybody's friend or relative
19      testify in a deposition, in a court case as
20      a witness?  Go ahead.
21               JUROR:  Susan Walsh. I testified in
22      front of a grand jury for fraud, about five
23      or six years ago.
24               THE COURT: Anybody else?  What is
25      your name?
```

1                      JUROR:  Elias Akeredolua.

2                      THE COURT: Where were you born?

3                      JUROR:  Brooklyn, New York.

4                      THE COURT: What neighborhood do you

5              live?

6                      JUROR:  West Brighton.

7                      THE COURT: How long?

8                      JUROR:  Five years.

9                      THE COURT:  Apartment or private

10             house?

11                     JUROR:  Private house.

12                     THE COURT: What do you do for a

13             living?

14                     JUROR:  I work with the City of New

15             York.

16                     THE COURT: Single, married,

17             divorced?

18                     JUROR:  Married.

19                     THE COURT: What does your wife do?

20                     JUROR:  She works as an accountant.

21                     THE COURT: Good job.  Thank you

22             very much.  I appreciate it.

23                     What is your name?

24                     JUROR:  Miseael Torres, born in

25             Mexico.

1               THE COURT: What neighborhood do you

2          live in?

3               JUROR:  Staten Island.

4               THE COURT: What neighborhood?

5               JUROR:  Graniteville.

6               THE COURT: For how long?

7               JUROR: Fifteen years.

8               THE COURT: Apartment or private

9          house?

10              JUROR:  Private house.

11              THE COURT: What do you do for a

12         living?

13              JUROR:  I have my own business.

14              THE COURT: Single, married,

15         divorced?

16              JUROR:  Married.

17              THE COURT: What does your wife do?

18              JUROR:  She works with me.

19              THE COURT:  In the business with

20         you?

21              JUROR:  Yes.

22              THE COURT: What kind of business?

23              JUROR:  Bakery.

24              THE COURT: Good job.   Thank you

25         very much, well done.

**Jury Selection** 109

1      What is your name?

2      JUROR:  John Rotundi.

3      THE COURT: Where were you born?

4      JUROR:  Brooklyn, New York.

5      THE COURT: What neighborhood do you

6      live?

7      JUROR:  I live in Great Kills,

8      Staten Island.

9      THE COURT: Apartment, private

10     house?

11     JUROR:  I live in a room in a

12     private house.

13     THE COURT: For how long?

14     JUROR:  Almost ten years now.

15     THE COURT: What do you do for a

16     living?

17     JUROR:  I teach.

18     THE COURT: What do you teach?

19     JUROR:  I teach childhood

20     education.

21     THE COURT: Single, married,

22     divorced?

23     JUROR:  Single.

24     THE COURT: Good job.   Thank you

25     very much.   Well done.

1                    What is your name?

2                    JUROR:  Marissa Rodriguez.

3                    THE COURT: Where were you born?

4                    JUROR:  Mount Sinai Hospital,

5          Manhattan.

6                    THE COURT: What neighborhood do you

7          live now?

8                    JUROR:  Brighton Avenue.

9                    THE COURT: For how long?

10                   JUROR:  2008.

11                   THE COURT: Apartment or private

12         house?

13                   JUROR:  Apartment.

14                   THE COURT: What do you do for a

15         living?

16                   JUROR:  Student teacher.

17                   THE COURT: Single, married,

18         divorced?

19                   JUROR:  Single.

20                   THE COURT: Good job.  Thank you

21         very much.

22                   What is your name, ma'am?

23                   JUROR:  Philomina Alonso.

24                   THE COURT: Where were you born?

25                   JUROR:  Puerto Rico.

1          THE COURT: What neighborhood do you

2     live?

3          JUROR:  Forest Avenue, Simonson.

4          THE COURT: How long?

5          JUROR:  Eleven years.

6          THE COURT:  Apartment, private

7     house?

8          JUROR:  Private house.

9          THE COURT: What do you do for a

10    living?

11         JUROR:  Medical clerk and dental

12    clerk.

13         THE COURT: Single, married,

14    divorced?

15         JUROR:  Married.

16         THE COURT: What does your husband

17    do?

18         JUROR:  Retired.

19         THE COURT: What did he do prior to

20    that?

21         JUROR:  He had an injury back --

22         THE COURT: What job?

23         JUROR: He was a tractor trailer

24    driver.

25         THE COURT: Good job.  Thank you

1       very much.  Well done.

2                   What is your name?

3                   JUROR:  Art Miranda.

4                   THE COURT: Where were you born?

5                   JUROR:  New York City.

6                   THE COURT: What neighborhood do you

7       live?

8                   JUROR:  Grant City.

9                   THE COURT: For how long?

10                  JUROR:  Five years.

11                  THE COURT:  Apartment, private

12      house?

13                  JUROR:  Apartment.

14                  THE COURT: What do you do for a

15      living?

16                  JUROR:  Advertising business, sole

17      proprietor.

18                  THE COURT: Single, married,

19      divorced?

20                  JUROR:  Single.

21                  THE COURT: Good job.  Thank you

22      very much.  Well done.

23                  What is your name?

24                  JUROR: Susan Saterparsa, born in

25      Lebanon.

1          THE COURT: What neighborhood do you

2     live in how?

3          JUROR:  Huguenot for twenty years.

4     I am married, I am a pharmacist.   My

5     husband is an investment banker.

6          THE COURT: Good job, thank you very

7     much.  Go ahead.  What is your name?

8          JUROR:  Charles DeCarlo.

9          THE COURT: Where were you born?

10          JUROR:  Brooklyn.

11          THE COURT: Where do you live now?

12          JUROR: Southeast Annadale.

13          THE COURT: For how long?

14          JUROR:  Working on twelve years.

15          THE COURT: Apartment, private

16     house?

17          JUROR:  Private house.

18          THE COURT: What do you do for a

19     living?

20          JUROR:  Elevator mechanic.

21          THE COURT: Single, married,

22     divorced?

23          JUROR:  Married, two kids.

24          THE COURT: What does your wife do?

25          JUROR:  She is a homemaker.

1            THE COURT: Good job.  Thank you

2    very much.

3            Ma'am, what is your name?

4            JUROR:  Lsi Ma.

5            THE COURT: Where were you born?

6            JUROR:  China.

7            THE COURT: Where do you live now?

8            JUROR:  Huguenot, Staten Island.

9            THE COURT: How long?

10           JUROR:  21 years.

11           THE COURT: Private house,

12   apartment?

13           JUROR:  Private house.

14           THE COURT: What do you do for a

15   living?

16           JUROR:  Postal worker.

17           THE COURT: Single, married,

18   divorced?

19           JUROR:  Married.

20           THE COURT: What does your husband

21   do?

22           JUROR:  He is on disability.

23           THE COURT: What did he do before

24   that?

25           JUROR:  Insurance agentl.

1           THE COURT: Good job.  Thank you

2     very much. Well done.

3           THE COURT: What is your name?

4           JUROR:  Hiu Loli.

5           THE COURT: Where were you born?

6           JUROR:  Hong Kong.

7           THE COURT: What neighborhood do you

8     live?

9           JUROR: Rossville.

10          THE COURT: For how long?

11          JUROR:  Four years.

12          THE COURT: Apartment, private

13    house?

14          JUROR:  Private house.

15          THE COURT: What do you do for a

16    living?

17          JUROR:  Accountant.

18          THE COURT: Single, married,

19    divorced?

20          JUROR:  Married.

21          THE COURT: What does your husband

22    do?

23          JUROR:  He is a federal employee.

24          THE COURT: For who?

25          JUROR:  FEMA.

1           THE COURT: Good job.   Thank you

2     very much. Well done.

3           What is your name?

4           JUROR:  Alex Rosa.

5           THE COURT: Where were you born?

6           JUROR:  Brooklyn, New York.

7           THE COURT: What neighborhood do you

8     live in now?

9           JUROR:  Great Kills.

10          THE COURT: How long?

11          JUROR:  Five years.

12          THE COURT: Apartment or private

13    house?

14          JUROR:  Private house.

15          THE COURT: What do you do for a

16    living?

17          JUROR: Solutions architect.

18          THE COURT: Single, married,

19    divorced?

20          JUROR:  Married.

21          THE COURT: What does your wife do?

22          JUROR:  Facilities director.

23          THE COURT: Good job.   Thank you

24    very much, well done.

25          What is your name?

1               JUROR:  Mary Gonzalez.

2               THE COURT: Where were you born?

3               JUROR: Philippines.

4               THE COURT: What neighborhood do you

5        live now?

6               JUROR:  Manor Heights.

7               THE COURT: For how long?

8               JUROR:  Six years.

9               THE COURT: Apartment, private

10       house?

11              JUROR:  Private house.

12              THE COURT: What do you do for a

13       living?

14              JUROR:  Medical doctor and a

15       research scientist.

16              THE COURT: Single, married.

17              JUROR: Married.

18              THE COURT: What does your husband

19       do?

20              JUROR:  He is a lawyer.

21              THE COURT: What kind of law does he

22       practice?

23              We talked about that.  Thank you

24       very much.  Well done.

25              What is your name?

1                    JUROR:  He is a lawyer.

2                    THE COURT: What kind of law does he

3          practice?  We talked about already.  Thank

4          you very much. Well done.

5                    What is your name?

6                    JUROR: Nicholas Surowiec.

7                    THE COURT: Where were you born?

8                    JUROR:  Staten Island.  Oakwood.

9                    THE COURT: How long?

10                   JUROR:  24 years.

11                   THE COURT: Apartment, private

12         house?

13                   JUROR: Private house.

14                   THE COURT: What do you for a

15         living?

16                   JUROR:  Construction.  Graveyard

17         shift.

18                   THE COURT: Well done.  Single,

19         married, divorced?

20                   JUROR:  Single.

21                   THE COURT: Good job.  Thank you

22         very much.  I appreciate it.

23                   What is your name?

24                   JUROR:  Anthony D.

25                   THE COURT: Where were you born?

1            JUROR:  Brooklyn.

2            THE COURT: Where do you live now?

3            JUROR:  New Springville.

4            THE COURT: For how long?

5            JUROR:  37 years.

6            THE COURT: Apartment, private

7     house?

8            JUROR:  Private house.

9            THE COURT: What do you do for a

10    living?

11           JUROR:  Construction.

12           THE COURT: Single, married,

13    divorced?

14           JUROR:  Married, wife is a

15    homemaker.

16           THE COURT: Good job, thank you very

17    much.  I appreciate it.

18           JUROR:  Mary Ward, born in Staten

19    Island.

20           THE COURT: What neighborhood do you

21    live in?

22           JUROR:  Pleasant Plains.

23           THE COURT: For how long?

24           JUROR:  25 years.

25           THE COURT: Apartment, private

1   house?

2               JUROR:  Private house.

3               THE COURT: What do you do for a

4   living?

5               JUROR:  Board of Ed in the

6   cafeteria.

7               THE COURT: Single, married,

8   divorced?

9               JUROR:  Married.

10              THE COURT: What does your husband

11  do?

12              JUROR:  Fed ex.

13              THE COURT: Good job, thank you very

14  much.  Well done.

15              What is your name?

16              JUROR:  Ken Morris.

17              THE COURT: Where were you born?

18              JUROR:  Staten Island.

19              THE COURT: What neighborhood do you

20  live in?

21              JUROR:  Travis.

22              THE COURT: Apartment or private

23  house?

24              JUROR: Private house.

25              THE COURT: How long have you lived

```
 1           in Travis?

 2                   JUROR: Just five, seven years.

 3                   THE COURT: What do you do for a

 4           living?

 5                   JUROR:  I work for the New York

 6           City Transit Authority.

 7                   THE COURT: What does your wife do?

 8                   JUROR:  Secretary.

 9                   THE COURT: Thank you very much.  I

10           appreciate it.  What is your name?

11                   JUROR:  Mike Wood.

12                   THE COURT: Where were you born?

13                   JUROR:  Jamaica.

14                   THE COURT: What neighborhood do you

15           live in?

16                   JUROR:  Rossville.

17                   THE COURT: How long?

18                   JUROR:  17 years.

19                   THE COURT: Apartment or private

20           house?

21                   JUROR:  Apartment.

22                   THE COURT: What do you do for a

23           living?

24                   JUROR:  New York CIty Transit.

25                   THE COURT: Single, married,
```

1       divorced?

2                    JUROR:  Married.

3                    THE COURT: What does your wife do?

4                    JUROR:  City Bank Administrator.

5                    THE COURT: Thank you.

6                    What is your name?

7                    JUROR:  Donald Buttermark, retired,

8       New York City Transit Authority.

9                    THE COURT: What neighborhood do you

10      live?

11                   JUROR:  Huguenot.

12                   THE COURT: Where were you born?

13                   JUROR:  Staten Island.

14                   THE COURT: What neighborhood do you

15      live in now?

16                   JUROR:  Huguenot.

17                   THE COURT: Apartment or private

18      house?

19                   JUROR:  Private house.

20                   THE COURT: Where do you work?

21                   JUROR:  Transit Authority.

22                   THE COURT: Single, married,

23      divorced?

24                   JUROR:  Married.

25                   THE COURT: What does your wife do?

1              JUROR:  Homemaker, cook.

2              THE COURT: Good job.  Thank you

3       very much.  I appreciate it.

4              What is your name?

5              JUROR:  John Urrico.

6              THE COURT: Where were you born?

7              JUROR:  Brooklyn.

8              THE COURT: What neighborhood do you

9       live?

10             JUROR:  Great Kills.

11             THE COURT: For how long?

12             JUROR:  Year and a half.

13             THE COURT: Apartment or private

14      house?

15             JUROR:  Private house.

16             THE COURT: What do you do for a

17      living?

18             JUROR:  Fireman.

19             THE COURT: I assume so.  You are

20      wearing a fireman jacket.

21             Single, married, divorced?

22             JUROR:  Married.

23             THE COURT: What does your wife do9?

24             JUROR: Financial manager.

25             THE COURT: Good job.  Thank you. I

1        appreciate it.

2                    Ma'am, what is your name?

3                    JUROR:  Susan Walsh.

4                    THE COURT: Where were you born?

5                    JUROR:  Staten Island.

6                    THE COURT: What neighborhood do you

7        live?

8                    JUROR:  Princes Bay.

9                    THE COURT: For how long?

10                    JUROR:  My entire life, 25 years.

11                    THE COURT: Apartment or private

12        house?

13                    JUROR:  Private house.

14                    THE COURT: What do you do for a

15        living?

16                    JUROR:  I run an internet company.

17                    THE COURT: What kind of company?

18                    JUROR:  Furniture.

19                    THE COURT: You sell furniture on

20        the internet?

21                    JUROR:  Yes.

22                    THE COURT: What kind of furniture?

23                    JUROR:  Very European furniture.

24                    THE COURT: Single, married,

25        divorced?

1            JUROR:  Single.

2            THE COURT: Good job.  Thank you

3    very much, Miss Walsh.  I appreciate it.

4            MR. RENFROE: May we step up

5    briefly?

6            THE COURT: Sure.

7            (A side bar discussion was held off

8    the record.)

9            THE COURT: First we are going to

10   hear from Mr. Mattei.  He is going to talk

11   to you for fifteen minutes.

12           MR. MATTEI:  May I inquire, your

13   Honor?

14           THE COURT: Yes.

15           MR. MATTEI:  Good afternoon, ladies

16   and gentlemen.  Thank you for being part of

17   this.  Just by a show of hands, how many

18   people watch some of the legal shows that

19   are on TV?  Boston Legal, CSI, Perry Mason?

20           In those shows, you very rarely if

21   ever see the voir dire.  I would imagine it

22   doesn't really make for thrilling TV.

23           You can see direct examination,

24   cross examination.  Everybody has an idea

25   what that's all about.

1            Now, for you who are here who have

2       not been on a jury before, now you know

3       what a voir dire is like.  But the

4       important thing is for my purposes, this is

5       the only time that you will get to talk

6       back to me, back to Mr. Renfroe, about your

7       feelings about this particular case.

8            Nobody is going to judge you on

9       things or judge you on your answers, but

10      just like in anything else in life, there

11      are some times you may not be -- you may be

12      pre-disposed or you may have ideas, which

13      don't make you fair for this case.

14           It is not a reflection on anybody's

15      personality, honesty or things like that,

16      so the only thing I ask you is to be as

17      frank as possible.

18           Now I have about fourteen minutes

19      left to ask you, all twenty of you, some

20      questions.  Maybe thirteen and a half.

21           THE COURT: Exactly.

22           MR. MATTEI:  The way I would like

23      to do it is ask some of the questions, but

24      then it is open to the group.  Just if you

25      have strong feelings one way or the other

1    about certain questions I ask, please let

2    us know.  It is the only way we can get a

3    fair jury.

4            The first thing about this case you

5    heard, there is a murder in this case.  The

6    defendant in this case is not charged with

7    an intentional murder.  This is what we

8    call a reckless depraved indifference

9    murder charge.

10            So, right off the bat, Mr.

11    Akeredolua, do you have any problem with

12    the fact that somebody can be charged with

13    murder or can be brought up for a murder

14    charge where they didn't intend to kill

15    somebody?

16            THE COURT: Come up.

17            (A side bar discussion was held off

18    the record.)

19            THE COURT: What Mr. Mattei is

20    really asking you is he's trying to say

21    that this is different than intentional

22    murder.  It is different in some ways.  It

23    is a different type of what is classified

24    as murder.  I will define that to you at

25    the end of the case.

1              The real question is will you be

2        able to listen to my definition of the law

3        and accept my definition of the law when it

4        comes to this type of murder case?

5              Does anybody have a problem with

6        that?  Anybody not going to listen to what

7        I say, not going to apply the law as I give

8        it to you at the end of the case?

9              Does anybody have a predisposition

10       as to what they think murder should be and

11       just disregard whatever I tell you that the

12       law, the lawful definition of this offense

13       is?

14              Is anybody going to do that?

15              Is anybody going to have a problem

16       with following the law as I give it to you?

17              Continue, Mr. Mattei.

18              MR. MATTEI:  Does anybody have a

19       problem with that?

20              Mr. Torres, do you have any problem

21       or strong feelings with the premise that

22       someone who chooses to act unlawfully can

23       be charged for a crime for the unintended

24       results of their conduct?

25              JUROR:  Could you repeat the

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

1      question?

2                MR. MATTEI:  Do you have any

3      problem, strong feelings about the idea or

4      the premise that somebody who commits a

5      crime can be charged for the unintended

6      results of their conduct?

7                JUROR:  No, I don't think of any.

8                MR. MATTEI:  So, again, this gets

9      into the intent question the judge has just

10     kind of given you a preview of.

11               But do you have any problem with

12     that idea.

13               JUROR:  No.

14               MR. MATTEI:  That somebody could be

15     held accountable with results which they

16     didn't specifically intend?

17               JUROR:  No, I don't have any

18     problem.

19               JUROR NO. 8:  Were you trying to

20     say this was an accident?  They were having

21     a fight?  They were killed by an accident?

22     Is that what you are trying to say?

23               MR. MATTEI: What do you mean by an

24     accident.  Do you mean unintentional

25     conduct?

1            JUROR:  Yes.

2            THE COURT: Basically yes.  Do you

3       have a problem --

4            JUROR NO. 8:  No.

5            THE COURT: It is not an accident,

6       that is now what we are talking about.  It

7       is not an accident.  All right?  If it's an

8       accident, that's not what we are talking

9       about.

10           Mr. Mattei, you know that, so

11      explain what you want to ask them.

12           MR. MATTEI:  Do you, Miss Ward,

13      some people say accident and it means

14      something like a child spilling milk.

15           JUROR:  No.

16           MR. MATTEI:  Some other people mean

17      unintended results.  Say they were fighting

18      someone had a knife in their hand and they

19      were stabbed, and the person was killed.

20      That wasn't intentional, but they were

21      killed.  So, it wasn't really they did it

22      on purpose.  It was an accident.

23           Would you have a problem with

24      charging somebody or convicting somebody of

25      a crime if the evidence proves to your

1        satisfaction all the legal elements we have

2        to prove as the judge will give them to you

3        in finding somebody guilty of something

4        that they didn't intend to do, because of

5        the result.

6                MR. RENFROE:  The only objection

7        that I will make is it be proven beyond a

8        reasonable doubt.

9                THE COURT: With that caveat.

10               MR. RENFROE:  Yes.

11               THE COURT: Do you understand?

12               MR. MATTEI:  You are trying to ask

13       me if the person was charged with murder,

14       will you be willing to say yes, they are

15       guilty if it wasn't intentional?

16               JUROR:  Correct.

17               MR. MATTEI:  Will you be able to

18       follow the law as I give it to you?

19               JUROR:  I guess so.

20               MR. MATTEI:  I need a yes or a no.

21               JUROR:  Yes.

22               MR. MATTEI:  But do you have a

23       problem with that idea?

24               JUROR:  No.

25               THE COURT: Does anybody else have a

1        problem with that idea?  Miss Rodriguez?

2                  JUROR:  Is the person mentally ill?

3                  MR. MATTEI:  Well, that may or may

4        not be a factor.  Do you think just because

5        somebody has a mental illness, that they

6        should not be held legally responsible for

7        their actions?

8                  JUROR:  Yes.

9                  MR. RENFROE:  Judge, just an

10       objection to form that was presented.

11                 THE COURT: Overruled.

12                 MR. MATTEI:  You feel fairly

13       strongly about that, based upon your own

14       personal experiences, maybe?

15                 JUROR: Yes.

16                 THE COURT: All right.  Mental

17       illness has a definition under our law.

18       There is a whole definition that goes with

19       that. It is not like that.

20                 Will you be able to apply the law

21       as I give it to you?

22                 JUROR:  Well, I took a course on

23       psychology and the law.  I am studying

24       psychology now -- I am taking a masters

25       program.

 1              THE COURT: That is not what I am

 2       asking.

 3              JUROR:  I can be biased because I

 4       know more about --

 5              THE COURT: Ma'am, listen to me.

 6       There is certain legal definitions that

 7       apply to certain situations.  What I am

 8       asking you is if you are selected as a

 9       juror in this case, will you be able to

10       apply the law as I give it to you without

11       interfering or changing it because you

12       don't think it's right, or you think you

13       know the lawyer.

14              What I am asking you is will you be

15       able to accept the law as I give it to you

16       and apply it, whether you agree with it or

17       not?

18              That is a simple question.

19              JUROR:  No.

20              THE COURT: Are you able to do that?

21              JUROR: No.

22              THE COURT: Because you will apply

23       your law?

24              (No response.)

25              THE COURT: I don't understand --

 1              JUROR:  Because I think

 2       independently.

 3              THE COURT: All right.  So you won't

 4       accept the law as I give it to you?

 5              JUROR:  No.

 6              THE COURT: Anybody else feel that

 7       way?

 8              Go ahead.

 9              JUROR 8:  What about if I have a

10       difference of opinion, the way you

11       interpret the law?

12              THE COURT: You can't.  If you are

13       selected as a juror in this case, you

14       decide the facts.  Jurors decide what

15       happened.

16              Your job is to decide whether the

17       witnesses are telling you the truth,

18       whether what you have seen exhibited is

19       true, that sort of thing, but when it comes

20       to applying the law, that is my job.

21              So, we have different jobs.  As

22       jurors, you judge the facts and as a judge

23       I decide what the law is.  As jurors, you

24       decide the facts, and then you apply the

25       law as I give it to you to those facts.

 1 |              Now, juror number four said she

 2 |      can't do that.  She can't do that.  Anybody

 3 |      else not able to do that?  Anybody else

 4 |      have a problem with that?

 5 |              JUROR:  Your Honor, law has to make

 6 |      sense to me.

 7 |              THE COURT:  It will make sense to

 8 |      you as best it can.  What I am telling you

 9 |      is I am in charge of the law.  That is what

10 |      judges do. The facts are your job.

11 |              You are the exclusive judges of the

12 |      facts.  That's the separation of the roles

13 |      that we play.  That is what I was telling

14 |      you earlier.

15 |              In a trial, jurors play one role,

16 |      judges play another role.  Together we make

17 |      sure that everything is done fairly and

18 |      honestly.

19 |              That is what the rules were about.

20 |      That is why you set certain rules so that

21 |      jurors don't just make up the rules as they

22 |      go along, because think they know better.

23 |              That is the point.  That is why we

24 |      have to make it fair.  That is why we have

25 |      rules.

 1              All right.  Are you going to be

 2      able to follow the rules?

 3                  JUROR 1:  I will, but your rules

 4      don't --

 5                  THE COURT: That is all I am saying.

 6      Can you follow the rules?  Anybody have a

 7      problem with following the rules that I

 8      gave you?

 9              All right.  Continue, Mr. Mattei.

10                  MR. MATTEI: Okay.

11              Does anybody else fel the same way

12      as Miss Rodriguez with regard to mental

13      illness and that somebody suffered from a

14      mental --

15                  THE COURT: That is not what she

16      said.  What she said is she won't follow

17      the law as I give it to her.

18              Does anybody else feel that way,

19      anybody?

20              Move on, Mr. Mattei, please.

21                  MR. MATTEI:  Does anybody here have

22      a problem, does everybody agree that

23      someone who is mentally ill or has a mental

24      illness can still know the difference

25      between right and wrong?

 1              MR. RENFROE:  Objection to that.

 2              THE COURT: Sustained.  Move on.

 3              MR. MATTEI:  Does anybody here

 4      think that, have any opinions about the

 5      drunk driving laws, whether you follow them

 6      stringently or not.

 7              Mr. Roth, how do you feel about the

 8      whole idea about people driving drunk or

 9      intoxicated?

10              JUROR:  I don't agree with it.

11              MR. MATTEI:  Do you think they are

12      applied too stringently or do you think

13      people like that --

14              JUROR:  Well, it is depending on

15      the case, but the person who drinks, they

16      know what is right and what is wrong.

17              MR. MATTEI:  Mr. Miranda, how do

18      you feel about that?

19              JUROR:  I don't know.  I guess they

20      are not enforced enough.

21              MR. MATTEI:  Miss Saterparsa?

22              JUROR:  Do I agree with the laws?

23              MR. MATTEI:  Do you think they are

24      enforced too stringently?  Everybody can

25      say There but for the grace of God goes I,

1      or if they get somebody arrested for DWI,

2      correct?

3          JUROR:   I think they are not

4      enforced enough.   We see too many DWIs at

5      the hospital.

6          MR. MATTEI:   How about Mr. Ken

7      Morris, how about somebody driving while

8      they are on drugs, illegal drugs?

9          How do you feel about that?

10         JUROR:   I don't think it is right.

11     Same thing as a drunk.

12         MR. MATTEI:   Anybody here disagree

13     with that?

14         Anybody have a problem with

15     somebody being held responsible for the

16     consequences of their actions, if they

17     drive while they are on illegal drugs.

18         MR. RENFROE:   Objection.

19         THE COURT: Sustained.   Rephrase the

20     question.

21         MR. MATTEI:   Miss Walsh, again, if

22     somebody is driving on drugs, do you have

23     any problem with that they be prosecuted?

24         JUROR:   No.

25         MR. MATTEI:   Do you have any

1          problem with the fact that they could be

2          convicted for crimes related to the way

3          they drive?

4               JUROR:  No.

5               MR. MATTEI:  If that's not -- if

6          something happens that they didn't intend

7          because they are on drugs?

8               JUROR:  No.

9               MR. MATTEI: Mr. Urrico?

10              JUROR:  No.

11              MR. MATTEI:  Mr. Buttermark?

12              JUROR:  No.

13              MR. MATTEI:  Mr. Wood?

14              JUROR:  No.

15              MR. MATTEI: Anything about that --

16         do you think that somebody that chooses to

17         drive on unlawful drugs should be

18         responsible for the consequences of their

19         actions?

20              JUROR:  Absolutely.

21              MR. MATTEI:  Whether they intended

22         those actions or not?

23              JUROR: Yes.

24              MR. MATTEI:  Miss Lee?  Could you

25         say your last name, or Ma?

 1            JUROR:  Ma.

 2            MR. MATTEI:  Ma, okay, I am sorry.

 3            Mr. Cassieri, Anthony.

 4            JUROR:  Yes.

 5            MR. MATTEI:  Feel the same way?

 6            JUROR:  You are guilty, you are

 7       guilty.

 8            MR. MATTEI:  Now, again, this is a

 9       murder case.  You brought up some possible

10       preconceived ideas about a knife or a gun

11       and things like that.

12            Does anybody think that this can't

13       be a murder case if a traditional weapon

14       wasn't used?

15            For instance, if somebody was

16       killed with a car?  Okay?

17            JUROR:  No.

18            MR. MATTEI:  It doesn't preclude

19       you from thinking, Oh, this is a car case

20       or an accident, right, because a car was

21       used and no0t a gun and not a knife?

22            JUROR:  NO.

23            MR. MATTEI:  Any problem with the

24       concept that it could be a murder case and

25       involve a car?

1          JUROR:  No.

2          THE COURT: One minute left.

3          MR. MATTEI:  Is there anybody here

4    who, for any reason, can't find the

5    defendant guilty for any reason, religious,

6    social, moral, philosophical, if the People

7    prove the elements of the crime beyond a

8    reasonable doubt, as your Honor will

9    describe them to you, that it's a murder

10   charge?

11         Does anybody have any hesitation if

12   we prove the case beyond a reasonable

13   doubt, in finding the defendant guilty, if

14   we prove the case beyond a reasonable

15   doubt?

16         JUROR:  I don't have a problem for

17   that.

18         MR. MATTEI: Mr. Torres.

19         Anybody?

20         Thank you very much.

21         MR. RENFROE:  First of all, good

22   afternoon, ladies and gentlemen.  How are

23   you doing today?  Ready to be jurors?

24         I am going to start with Mr.

25   Buttermark, okay?

1          Did you ever see that show Dragnet?

2          JUROR: Yes.

3          THE COURT: What was the famous line

4     from Dragnet?

5          THE COURT: Which show?

6          MR. RENFROE: I am showing my age.

7          JUROR: I watched it last week.

8          MR. RENFROE: Do you remember when

9     he said "Just the facts."

10         That is what you are going to do as

11    a juror. Can you decide the facts as you

12    are chosen as a juror here?

13         JUROR: Yes.

14         MR. RENFROE: Everybody understand

15    that?

16         Now, let's be honest, does anyone

17    of us like crime?

18         Mr. DeCarlo, do you like crime?

19         JUROR: No.

20         MR. RENFROE: You don't want it in

21    your neighborhood, right?

22         JUROR: No.

23         MR. RENFROE: They've got to prove

24    the case beyond a reasonable doubt. Okay?

25    If they don't prove that my client

 1          committed the crime, can you vote not

 2          guilty?

 3                  JUROR:  If they prove --

 4                  MR. RENFROE:  If they don't prove

 5          it beyond a reasonable doubt, can you vote

 6          not guilty?

 7                  JUROR:  I am sitting there sleeping

 8          and --

 9                  THE COURT: If they prove the case

10          beyond a reasonable doubt, you have to vote

11          guilty.

12                  If they don't prove the case beyond

13          a reasonable doubt, you have to vote not

14          guilty.

15                  Are you going to be able to follow

16          those rules?

17                  JUROR:  Yes.

18                  THE COURT: Anybody have a problem

19          with that?  Sorry, Mr. Renfroe.

20                  MR. RENFROE: Not a problem.  I just

21          want to come back to you because there was

22          something that I think you wanted to say.

23                  Is there something -- we are

24          looking for the same thing.  Myself, Judge

25          Collini, ADA Silvers, ADA Mattei.  We want

1    a fair jury here.  Decide the case based on

2    the evidence, okay?  Okay?

3             Is there anything -- you hesitated

4    a couple of times.  You are saying you know

5    about my background or something like that.

6             I just need to know.  It's an

7    honor, and I don't mind you sitting here,

8    but is there any reason why I should be

9    worried while you are sitting here?

10            JUROR:  Just like I got to answer

11   his questions or your questions, but I

12   can't defer around the question --

13            MR. RENFROE:  Come and give it to

14   me.

15            JUROR:  The job I do I travel all

16   over Brooklyn, Queens, Rockaways, Nassau,

17   and I work in a lot of areas that I have

18   been subjected to a lot of things.

19            MR. RENFROE:  Okay.  We know a

20   couple of things.  This is a car accident.

21   It is not a stabbing or -- it is a car

22   accident.

23            JUROR:  I understand it is a car

24   accident.

25            MR. RENFROE:  You also heard

1        something about drunk driving.  They have

2        to prove that.

3                JUROR:  Yes.

4                MR. RENFROE:  Okay?  My position is

5        it's not drunk driving, it has to be

6        something to do with mental illness.

7                I am not going to have to charge

8        you on the law.  That is what the judge has

9        to do.  If they don't prove it is drunk

10       driving and --

11               One time I might have a burden of

12       proving something, but let's say I prove it

13       is mental illness, can you vote not guilty?

14               MR. MATTEI:  Objection.

15               THE COURT: Overruled.

16               MR. RENFROE:  Can you do that?

17       That is the question.

18               JUROR:  Well, you mentioned drugs.

19       You mentioned alcohol.  Now you are

20       mentioning mental illness.  So, again --

21               MR. RENFROE:  We are not trying it

22       now.

23               JUROR:  You are asking me now to

24       base a question based on an answer that

25       you've got three variables.  It is hard for

1      me to say yes or no.

2      THE COURT: What Mr. Renfroe is

3      asking is the same thing Mr. Mattei asked

4      you.

5      It boils down to the same thing.

6      Will you be able to follow the law as I

7      give it to you or will you simply disregard

8      it and do whatever you want?

9      Are you going to follow the law as

10      I give it to you?

11      JUROR:  Yes.

12      THE COURT: Anybody else, except for

13      Miss Rodriguez, have a problem with that?

14      Everybody has been telling me over

15      and over again, and I asked this question

16      ten times.  It is what the lawyers do.

17      They just don't put it in the same words.

18      It boils down to will you follow the law as

19      I give it to you?

20      By that I mean if the People don't

21      prove their case beyond a reasonable doubt,

22      you vote not guilty.

23      There is going to be definitions of

24      things. I am going to define them to you.

25      You have to accept my definition of things

1       on the law.  Are you going to be able to do

2       that?

3               Is anyone but Miss Rodriguez going

4       to be able to do that?  Anyone have a

5       problem with that?

6               Mr. Renfroe, go ahead.

7               MR. RENFROE:  I am going to ask you

8       a different question.  Miss Walsh, I am

9       going to come back to you.

10              Did you ever see any of those Peter

11      Sellers movies?

12              JUROR:  Who?

13              MR. RENFROE:  Peter Sellers.

14              JUROR:  I don't know who that is.

15              MR. RENFROE:  I see a nod of the

16      head.  Anybody else?  I don't want to keep

17      picking on you.

18              Anyone else see Peter Sellers

19      movies.

20              Did you see the one in the hotel

21      and there is a dog there and he says, "Does

22      your doggy bite?"

23              Anybody see that?

24              JUROR:  Yes.

25              MR. RENFROE:  Tell me what happens.

1            JUROR: He says "No, my dog don't

2       bite."

3            MR. RENFROE:  Then what happened?

4            JUROR:  He says, "Well, it's not my

5       dog."

6            MR. RENFROE:  The dog bites him and

7       he goes, "It is not my dog."  Okay.

8            You are probably wondering what

9       that has to do with jury selection, right?

10           I am going to tell you.  The People

11      have to prove every element of every

12      charge.  Okay?

13           Now, if they prove that there was a

14      dog there and they prove that the man got

15      bit and they bring the charges against me

16      because there was a dog there that bit the

17      guy, what is my defense?  It is not my dog.

18      They have to prove that it's my dog.

19           They have to prove -- very simple,

20      but I want you to bring your common sense.

21           I mean, Miss Ward, what training

22      did you take to become a juror here today?

23           Did they send you to a special

24      school?

25           JUROR:  No.

Case 1:14-cv-01402-ERK-LB Document 6-4 Filed 08/12/14 Page 149 of 164 PageID #: 941

**Jury Selection** 149

1            MR. RENFROE:  What did they ask you

2        to bring, your common sense, okay?

3            JUROR:  Yes.

4            MR. RENFROE:  Do you all understand

5        that?

6            All we want you to bring is your

7        common sense, decide the case based on the

8        evidence.  If you are sitting here, can you

9        do that for me?

10           JUROR: Yes.

11           MR. RENFROE:  Miss Rodriguez, you

12       said something about mental illness.

13           JUROR:  Yes.

14           THE COURT:  Mr. Renfroe, pick

15       another juror.

16           MR. RENFROE:  I withdraw that

17       question.

18           Miss Gonzalez?

19           JUROR:  Yes.

20           MR. RENFROE:  You work as --

21           JUROR:  I am a research scientist

22       and a medical doctor.

23           MR. RENFROE:  One thing I have to

24       ask you.  If you are sitting here as a

25       juror, you actually know probably more

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

1      about the topic than some of the other

2      jurors, from your training as a physician.

3              If you are sitting as a juror in

4      this case, can you just take the law into

5      that room that the judge gives you?

6              Do you understand what I am saying?

7      We all want you to bring your life's

8      experience, but you can't say, I am a

9      doctor and this is what I believe, based on

10     that subject.

11             Can you just give us your opinion

12     as a regular juror?  Does that make any

13     sense, my question?  You can tell me if it

14     doesn't and I will --

15             THE COURT: In other words, you

16     can't sit in the jury room with the other

17     jurors and say, You know, the judge said

18     this.  When I went to medical school, we

19     learned something that I think is different

20     than the judge, so I want all you folks to

21     listen to me and not the judge.

22             Are you going to be able to do

23     that? Are you going to do that if you sit

24     in the jury room?

25             Mr. Renfroe is saying you can't do

 1          that.  You have to listen to what I say.

 2                    JUROR: I understand.

 3                    MR. RENFROE:  Are you going to do

 4          that?

 5                    JUROR: Yes.

 6                    MR. RENFROE:  Now, there may be

 7          defenses presented of, say, a mental

 8          illness.

 9                    Would it be safe to say -- and I

10          think it is not a question as a doctor, but

11          mental illness can affect the actions of a

12          person in everyday life, is that correct?

13                    JUROR:  Sure.

14                    MR. RENFROE:  It may be such that

15          some mental illness -- maybe we said that

16          the people either don't know or can't

17          control what they are doing, would that be

18          a safe statement?

19                    JUROR:  Sure.

20                    MR. RENFROE:  If the Judge gives

21          you a charge and you are sitting as a juror

22          in this case, you would be able to follow

23          the law that he gives, safe to say?

24          Everybody agree with that?

25                    Now, Mr. Cassieri, did I pronounce

1       your name correctly?

2                 JUROR: You did very good.

3                 MR. RENFROE:  I have been known to

4       mess up a few names.

5                 JUROR:  It is okay.

6                 MR. RENFROE:  If you look up, see

7       me snoring over there, I am very loud and I

8       am sitting there, okay?  I don't do too

9       much during the whole trial.  You realize

10      that the People of the State of New York,

11      they have to prove this case.

12                If they don't prove it, will you

13      vote not guilty?

14                JUROR:  According to the law.

15                MR. RENFROE:  That is what I want.

16                JUROR:  That is what you want.

17                MR. RENFROE:  Even if I snore.

18      Even if I snore loudly, regardless of what

19      you hear here, you will only go according

20      to the law the judge is going to tell me,

21      correct?

22                JUROR:  Yes.

23                MR. RENFROE:  What about Mr.

24      Surowiec.  What if Mr. Surowiec says we

25      didn't hear the other side.  We heard one

1    side, we didn't hear the other side.

2              Mr. Renfroe or Mr. Araujo didn't do

3        anything the whole time.

4              What are you going to say?  What

5        are you going to tell them?

6              JUROR:  You want me to listen to

7        the law.  You don't really view my own

8        opinion of what I hear here.

9              In other words, if I may, you want

10       me to only do --

11             In other words, if the wall is

12       green, and you insist that it's white, and

13       my opinion of it is white, but the judge

14       says you can only go forward according to

15       the color chart and it says it's green, you

16       want me to say it's green.

17             MR. RENFROE:  No.

18             THE COURT: That won't be the law.

19       If the wall is white, the law will be the

20       wall is white.  What I am saying to you

21       is -- what Mr. Renfroe is getting at is

22       this:

23             Sometimes when you are doing the

24       job as a juror, you have to apply different

25       rules than you would in your everyday life.

1              Let's say you have two kids.  I

2      don't know how many kids you have, but

3      let's say you have two kids.

4              You walk into the kitchen.  The

5      cookie jar is broken.  You know it was one

6      of them, you just don't know which one it

7      was.

8              You call them both in and you turn

9      to the first kid and say, Okay, who broke

10     the cookie jar, and you listen to what he

11     says, I didn't do that or whatever.

12             You turn to the second kid and you

13     said, Who broke the cookie jar?

14             You listen to both sides.  You make

15     a decision because you heard both sides.

16     You know both kids, and then you figure out

17     what happened with the cookie jar.

18             This is not like that. In this

19     situation, one side is saying she broke the

20     cookie jar.  The other side is sitting down

21     and saying I am presumed to be innocent of

22     breaking that cookie jar.

23             So, the side that says that person

24     broke the cookie jar has the burden of

25     proof to prove beyond a reasonable doubt to

 1          overcome the presumption of innocence that

 2          they broke the cookie jar.

 3                  So, the side that says that person

 4          broke the cookie jar has the burden of

 5          proof to prove beyond a reasonable doubt to

 6          overcome the presumption of innocence that

 7          they broke the cookie jar.

 8                  They don't have to say because they

 9          are presumed innocent, unlike the two kids,

10          your two kids, in the kitchen, where

11          there's neither one is presumed innocent

12          and neither one is accusing the other.  So,

13          you want to hear what both of them have to

14          say before you make the decision.

15                  But the different rules here are

16          that one side is accusing and the other

17          side is presumed to be innocent.

18                  So, the side that makes the

19          accusation has to prove what they say ad

20          they have to prove what they say beyond a

21          reasonable doubt.

22                  If you are selected as jurors in

23          this case, two things.  Number one, I will

24          define all these terms in much greater

25          detail at the end, but, number two, what we

1          need to know now, what Mr. Renfroe was

2          asking, is will you accept that as the law

3          and apply that to the case.

4                    Does anybody have a problem with

5          that, other than Miss Rodriguez?

6                    Anybody else?  No.

7                    THE COURT: Move on.  You have one

8          minute left.

9                    MR. RENFROE:  Real quick, Mr. Rosa,

10         I see you outside.  Why don't I talk to you

11         and invite you to lunch.

12                   JUROR:  Because I can't talk about

13         the case.

14                   MR. RENFROE:  What we are going to

15         do, we are going to decide this case, like

16         this is a game here.  Everything we are

17         going to do is going to be inside this

18         room, okay?

19                   It wouldn't be appropriate if I

20         bought you lunch and say listen, because I

21         would be trying to influence you outside of

22         this courtroom, okay?

23                   I want everyone to understand that.

24         The last thing I say is we started out and

25         I will end the same way, we've got to

1         accept how you decide this, okay?

2                 If you do that fairly, that's what

3         we all ask, okay?  Bring your common sense,

4         okay?  It's not an easy job,  but it is, as

5         the Judge said before, it is an important

6         job, okay?

7                 So, I just ask you to bring all

8         your care and attention to it and I thank

9         you very much.

10                THE COURT: Thank you, Mr. Renfroe.

11        Those folks in the audience whose names

12        weren't called, not part of these 20 folks

13        here, you can go home.

14                Be back in Central Jury tomorrow at

15        2:00 p.m..  2:00 p.m. You have to come

16        back.  You are coming back tomorrow at 2:00

17        p.m. in Central Jury.  Everybody, you are

18        excused.  You can go home now.

19                The other 20 folks, wait outside

20        the door.

21                (Whereupon, the panel of

22        prospective jurors are excused from the

23        courtroom.)

24                THE COURT: Prospective jurors are

25        out of the room, the door is closed.

 1              How much time do you need?

 2              MR. MATTEI:  Five, ten minutes,

 3      Judge.

 4              THE COURT: Five minutes.  I will be

 5      in the other room.

 6              (Recess taken.)

 7              THE CLERK: Jury selection

 8      continued, indictment 335/06, People of the

 9      State  of New York against Taliyah Taylor.

10              THE COURT: There are no jurors

11      selected.  So jurors one through twelve for

12      cause, People.

13              MR. MATTEI:  Number four.

14              THE COURT:  Miss Rodriguez.

15              I will hear you.

16              MR. MATTEI:  Judge, she said she

17      wouldn't be able to follow your Honor's

18      law.

19              THE COURT: She'd apply her own law.

20              MR. MATTEI:  She would apply her

21      own law.

22              THE COURT: Mr. Renfroe?

23              MR. RENFROE:  No objection.

24              THE COURT: Miss Rodriguez indicated

25      even after extensive attempts at

1     rehabilitation by the Court that she's

2     taken a class in psychology and apparently

3     knows the law better than the Court.  So,

4     she'll apply her own law.

5         So, that application for cause is

6     granted.  Anybody else?

7         MR. MATTEI:  No, your Honor.

8         THE COURT: For cause, defense?

9         MR. RENFROE: Your Honor, just as to

10    Mr. DeCarlo, I don't know if he said he

11    could be fair.  I think he mentioned three

12    times that he thought he could be fair.

13        THE COURT: He did it more than

14    that.

15        MR. RENFROE:  On three separate

16    occasions.

17        THE COURT:  He kept indicating that

18    there are things that he'd apply that may

19    be outside the scope, that he might be

20    fair.  But then in the final analysis he'd

21    say yes, and then maybe and yes, again,

22    counsel.

23        MR. MATTEI:  I heard those answers.

24    He said he could be fair each and every

25    time, but I don't know.  He seems to have a

```
 1           lot of issues.

 2                    THE COURT: He seems to have a lot

 3           of issues.  Consent to challenge for cause?

 4                    MR. MATTEI:  Sure, Judge.

 5                    THE COURT: Mr. DeCarlo for cause,

 6           granted.  Anybody else -- Defense?

 7                    MR. RENFROE:  No, your Honor.

 8                    THE COURT: Peremptory challenge,

 9           People?

10                    MR. MATTEI:  Number one, number

11           three.

12                    THE COURT: Number three is Mr.

13           Rotundi.  Go ahead.

14                    MR. MATTEI:  Number eleven, Mr.

15           Rosa, and number twelve, Miss Gonzalez.

16                    THE COURT: Defense?  Peremptory

17           challenge?

18                    MR. RENFROE:  Number five, Miss

19           Alonso.  Number nine, Miss Ma.  That was

20           it.

21                    We are going one through twelve.

22           That's it.

23                    THE COURT: That makes Mr. Torres

24           juror number one, Mr. Miranda juror number

25           two, Miss Saterparsa juror number three and
```

1        Miss Loli, juror number four.

2                Is that your understanding,

3        counsel?  People?

4                MR. MATTEI:  Judge, when you say

5        Miss Loli, that is in seat number ten?

6                THE COURT: Miss Loli.  There is

7        only one Miss Loli, I think.  That was

8        nine, so it is Torres, Miranda, Saterparsa

9        and Loli, juror number ten.

10               All right, we have four.  The next

11       eight jurors.  That's thirteen through

12       twenty for cause.  People?

13               MR. MATTEI:  I don't know if it

14       would amount to a challenge for cause per

15       say, but hear me on juror number thirteen.

16       I don't know what it is going to be like if

17       this person is working all night --

18               THE COURT: Mr. Renfroe?  For cause,

19       thirteen?  He works the graveyard shift.

20       He said he'd have a real problem falling

21       asleep.  He'd have a problem staying awake.

22               MR. RENFROE:  I will consent.

23       Thirteen on consent.  For cause, anybody

24       else?

25               MR. MATTEI:  No, your Honor.

*ELIZABETH W. CRUZ    PRINCIPAL COURT REPORTER*

1            THE COURT: Defense?

2            MR. RENFROE:  No.

3            THE COURT: For cause?  Peremptory

4     challenge fourteen through twenty?

5            MR. MATTEI:  None, your Honor.

6            THE COURT: Defense, fourteen

7     through twenty?

8            MR. RENFROE: Your Honor, number

9     fourteen and number eighteen.

10           THE COURT: Mr. Buttermark?

11           MR. RENFROE:  Yes, fourteen and

12    eighteen.  That leaves Miss Ward as juror

13    number five, Mr. Morris, juror number six,

14    Mr. Wood juror number seven, Mr. Urrico is

15    juror number eight and Miss Walsh is juror

16    number nine.

17           MR. RENFROE:  I missed, I have to

18    take off Mr. Morris.  I apologize.

19           THE COURT: Mr. Morris?

20           MR. RENFROE:  Yes.  I apologize,

21    your Honor.

22           THE COURT: People?

23           MR. RENFROE:  He said he served on

24    the Grand Jury.

25           MR. MATTEI:  It is up to the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT: Do you want to use a

2     peremptory challenge for Mr. Morris?

3          MR. RENFROE:  Yes.

4          THE COURT: All right.  Ward is

5     five, Wood is six, Urrico is seven and

6     Walsh is eight.

7          That is eight jurors.  Back on the

8     record, tomorrow at 2:15?

9          MR. RENFROE:  Yes.

10         Your Honor, may I make a request

11    for both counsel?  Since we did so good, is

12    it possible to have fifteen minutes

13    tomorrow?

14         THE COURT: Fine.  Fifteen minutes

15    tomorrow. Go.

16         (Defendant remanded.)

17         (Whereupon, the trial was adjourned

18    to October 7, 2008.)

19              *       *       *

20     It is hereby certified that the foregoing is

21     a true and accurate transcript of the

22     proceedings.

23     _____

24     ELIZABETH W. CRUZ

25     PRINCIPAL COURT REPORTER

*ELIZABETH W. CRUZ     PRINCIPAL COURT REPORTER*