| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

TALIYAH TAYLOR,

                Petitioner,

**MEMORANDUM & ORDER**

– against –

SABINA KAPLAN,                14-cv-1402 (ERK) (LB)

                Respondent.

KORMAN, J.

Taliyah Taylor was convicted, in Richmond County Supreme Court, of depraved-indifference Second-Degree Murder under N.Y. PENAL LAW § 125.25(2), Reckless Endangerment in the First Degree under N.Y. PENAL LAW § 120.25, and Operating a Motor Vehicle While Under the Influence under N.Y. VEH. & TRAF. LAW § 1192(4). The Appellate Division affirmed her convictions on direct review, *People v. Taylor*, 98 A.D.3d 593 (2012), as did the New York Court of Appeals, *People v. Heidgen*, 22 N.Y.3d 259 (2013). In 2014, she filed a petition for a writ of habeas corpus. Because that petition contained unexhausted claims, Judge Brodie stayed proceedings to allow Taylor to pursue a motion to vacate her conviction under N.Y. CRIM. PROC. LAW § 440.10. The Supreme Court denied Taylor's § 440.10 motion, ECF No. 29 Ex. 11, and the Appellate Division denied leave to appeal, ECF No. 29 Ex. 17. I subsequently allowed Taylor to amend her original 2014 petition in order to add claims exhausted in the § 440.10 proceedings. *See* Memorandum & Order Granting in Part and Denying in Part Motion to Amend Petition, ECF No. 33 (March 17, 2017). In the same Memorandum & Order, I directed the district attorney to respond

on the merits to eight of Taylor's asserted grounds for habeas relief. Those claims are now fully briefed and ready for decision. Because Taylor is proceeding *pro se*, I read her papers liberally, *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983), and since I write for the parties, I generally assume familiarity with the facts of this case. For the following reasons, Taylor's petition for a writ of habeas corpus is denied.

## I. Insufficiency of the Evidence

At Ground One of her 2014 petition (as supplemented by her amended petition), Taylor claims that the evidence presented at her trial was insufficient to prove that she acted with "depraved indifference to human life," as the statute of conviction requires. *See* N.Y. PENAL LAW § 125.25(2). Her basic argument is that, during the events at issue, she was in such a state of drug-induced psychosis as to be unaware of the fact that she was actually driving. On federal habeas review, a petitioner pressing a sufficiency-of-the-evidence challenge that has already failed in state court bears a double burden. First, the petitioner must show that the evidence was constitutionally insufficient—that viewed in the light most favorable to the prosecution, no rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). And second, she must show that the state court decisions rejecting her challenge were more than merely wrong. "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (internal quotation marks omitted).

Under New York law, "depraved indifference is a culpable mental state . . . best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not. Circumstantial

evidence can be used to establish the necessary mens rea." *People v. Heidgen*, 22 N.Y.3d 259, 274–75 (2013) (citations and internal quotation marks omitted). Both the Appellate Division and the Court of Appeals held that the evidence of Taylor's mental state was enough to support her conviction. *Id.* at 277–78; *Taylor*, 98 A.D.3d at 594. The Court of Appeals summarized the trial record as follows: "[Taylor] buckled her seat belt and set out to drive as fast as she could go. She proceeded at speeds in excess of 80 miles per hour on a local road, without lights, at times on the wrong side of the street. Her statements to police revealed that she had perceived at least some of the obstacles in her path, notably the pedestrian victim prior to striking him. Taylor's behavior was obviously frenzied, but it is also clear that she was aware of her surroundings." *Heidgen*, 22 N.Y.3d at 277–78.

Those findings have ample support in the record. And to the extent that the evidence of Taylor's intoxication and "frenzied" behavior might support a different conclusion, I "presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (internal quotation marks omitted). At the very least, the Court of Appeals's determination that "the jury could have concluded that [Taylor] recklessly engaged in conduct that created a grave risk of death to others, with an utter disregard for whether any harm came to those she imperiled," was in no way objectively unreasonable. *See Heidgen*, 22 N.Y.3d at 278.

## II. Incorrect Jury Instructions

At Ground Three of the 2014 petition, Taylor argues that she was denied due process by a jury instruction that mischaracterized the meaning of "depraved indifference" under New York law. To win relief on this theory, Taylor must show that 1) the charge was in fact incorrect as a matter of state law, and 2) that the error effectively resulted in the district attorney being relieved

of its burden to prove each element of the offense beyond a reasonable doubt. *See Walker v. Graham*, 955 F. Supp. 2d 92, 111–12 (E.D.N.Y. 2013) (Chen, J.).

Taylor cannot prevail on this claim because there was no error of New York law—the jury instructions gave the correct definition of depraved indifference. Since its decision in *People v. Feingold*, 7 N.Y.3d 288, 294 (2006), the New York Court of Appeals has interpreted § 125.25(2)'s reference to "circumstances evincing a depraved indifference to human life" to require proof of a "culpable mental state." *Feingold* overruled *People v. Register*, 60 N.Y.2d 270, 278 (1983), under which "[t]he concept of depraved indifference . . . function[ed not] as a *mens rea* element, but to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder." Taylor's argument that the trial judge instructed the jury under the *Register* standard rather than the *Feingold* one is belied by the record. In both his original charge, and a second charge on depraved indifference given at the jury's request, the trial judge clearly explained that depraved indifference refers to the defendant's state of mind. Taylor's focus on the trial judge's use of the phrase "under *circumstances evincing* depraved indifference" is unavailing. Not only was that language drawn directly from the text of § 125.25(2), even if it were not, it could hardly have nullified the judge's repeated, unambiguous, instructions to make a finding about Taylor's mental state.

### III.  Ineffective Assistance of Counsel

Ground Four of Taylor's 2014 petition, as amended, argues that her trial counsel was constitutionally ineffective. Here, Taylor again bears the burden of overcoming our double deference to the state proceedings. *See, e.g.*, *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). First, we defer to counsel's reasonable decisions made in the course of representation: "There is a strong presumption that counsel's conduct fell within the wide range of professional assistance. To

overcome that presumption, a petitioner must . . . show that counsel's performance was deficient by demonstrating that the representation fell below an objective standard of reasonableness . . . [, and] that counsel's deficient representation was prejudicial . . . by establishing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Weingarten v. United States*, — F.3d —, 2017 WL 3178548, at *3 (2d Cir. 2017) (citations and internal quotation marks omitted). Second, we defer to the state court's view of counsel's decisions, unless that view rests on either an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

I previously narrowed the scope of Taylor's ineffective assistance claim to three asserted failings on the part of her lawyer: 1) failing to respond to pre-trial publicity by conducting an inadequate *voir dire* and by not making a renewed motion for a change of venue; 2) failing to adequately evaluate and respond to, and changing his trial strategy in reaction to, the district attorney's disclosure of the Rikers Island tapes; and 3) failing to object to certain aspects of the district attorney's summation. *See* Memorandum & Order Granting in Part and Denying in Part Motion to Amend Petition, ECF No. 33 (March 17, 2017).

*Responding to Pre-Trial Publicity*

Before trial, Taylor's counsel moved for a change of venue out of Richmond County, in light of the victim's prominence in the Staten Island legal community and the significant pre-trial publicity that surrounded the case as a result. That motion was denied without prejudice to renewing it after the close of *voir dire*. Taylor argues that her lawyer conducted a *voir dire* inadequate to determine if potential jurors had been tainted by media coverage, but the record reveals no such deficiency. The trial judge asked each potential juror about their exposure to coverage of the case—only one responded that he had read any such accounts, and he was promptly

excused as a result. Taylor's counsel could hardly have been ineffective simply for failing to repeat questions that the judge had already asked.

By the same token, trial counsel's decision not to renew his motion for a change of venue was perfectly reasonable. Motions for a change of venue are granted sparingly in New York, and given the realities of the jury pool revealed during *voir dire*, the facts of this case presented exceptionally weak grounds for one. Indeed, the New York Court of Appeals has affirmed the denial of a change of venue under circumstances indicating a much greater risk of impermissible media influence. In one recent case, it held no change of venue was needed when more than half the venire "came to court with an opinion as to [the] defendant's guilt or innocence," but "*voir dire* successfully culled out jurors who may have been biased by pretrial publicity." *People v. Cahill*, 2 N.Y.3d 14, 41 (2003). Given that background, no reasonable attorney could have expected such a motion to succeed where only a single potential juror had been exposed to reporting on the case, and was dismissed as a result. Failure to make a frivolous motion does not constitute ineffective assistance of counsel. *United States v. Boothe*, 994 F.2d 63, 69 (2d Cir. 1993).

*Responding to the Rikers Island Tapes*

At trial's outset, Taylor's counsel had planned to present an insanity defense, arguing that Taylor suffered from paranoid schizophrenia and that her condition prevented her from appreciating the nature and consequences, or the wrongfulness, of her conduct. Before the defense case began, however, the district attorney disclosed that it had obtained tapes of phone calls Taylor had made from Rikers Island. The contents of those tapes suggested that Taylor was feigning mental illness and had inappropriately coached potential witnesses to give answers favorable to her planned defense. The district attorney provided the tapes to Taylor's lawyer, and indicated it

planned to use them to impeach Taylor's witnesses and rebut her claim of insanity. Taylor raises five objections to her attorney's performance from that point forward. None have merit.

First, Taylor argues that her counsel should have sought more than a one-day continuance to review the tapes. This claim has no basis in fact. At Taylor's § 440.10 hearing, her lawyer testified that he was able to review all of the tapes during that time, and the state judge made a finding of fact to the same effect that is now entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).

Second, Taylor contends that her counsel failed to adequately consult with his testifying experts as to whether the tapes would change their opinions of Taylor's mental health. The record on to what degree Taylor's lawyer made such consultations is unclear, but even assuming that his performance was deficient in that regard, the record cannot support a finding that it actually prejudiced Taylor's defense. Taylor's counsel did not abandon his planned insanity defense because he believed that the tapes would cause his experts to change their opinions, but because he concluded that they would cause the jury to regard those experts' testimony as worthless. There is no likelihood that any amount of consultation with medical experts would have changed his mind on that score.

Third, Taylor asserts that her lawyer should have moved for a mistrial on the grounds that the district attorney should have disclosed the existence of the tapes at an earlier time. Passing over whether her counsel should in fact have made such a motion, Taylor has not shown any prejudice flowing from that decision. For one thing, it is highly unlikely that such a motion would have been granted. The tapes at issue were of *Taylor's own words*. Any prejudice she suffered from her lawyer's late discovery of those statements could have been averted if she dealt with him honestly, and it is faintly absurd to imagine the trial judge would have granted a mistrial as a consequence

of her failure to do so. Indeed, as the district attorney points out, the judge had already denied a motion to take the comparatively mild step of suppressing the tapes. Moreover, even had a mistrial been moved for and granted, Taylor's counsel testified at the § 440.10 hearing that the strategy he pursued after learning of the tapes was the same one he would have pursued at a second trial.

Taylor's fourth and fifth points relating to the Rikers Island tapes can be grouped together; since the claim that her attorney was ineffective for failing to put on a defense case, and the claim that he was ineffective for failing to put on an insanity defense, are functionally identical. In Taylor's § 440.10 proceedings, the state judge held that Taylor's lawyer's decision to proceed with an intoxication defense based solely on cross-examining the district attorney's witnesses was a "reasonable, strategic decision" that "fell within the parameters of meaningful representation." ECF No. 29 Ex. 11 at 14. And even if counsel had pressed onwards with an insanity defense, the § 440.10 judge also held that the ultimate outcome of the trial would have been the same. *Id.* at 13. Given the contents of the tapes, which would have had a "substantial, deleterious, if not deadly, impact on the credibility of" Taylor's insanity defense, *id.*, the § 440.10 judge's conclusions were far from unreasonable.

*Responding to the District Attorney's Summation*

Finally, Taylor argues that her attorney should have objected to several portions of the district attorney's closing argument. Passing over the finer questions of whether any of the identified statements bore objecting to, or whether failing to do so fell below an objective standard of reasonable performance, certainly they were not (either individually or cumulatively) so egregious as to have probably affected the jury's ultimate verdict. At the very least, the § 440.10 judge's holding that this claim lacked merit was not an unreasonable application of federal law.

## IV. Incompetence to Waive *Miranda* Rights

Ground Six of Taylor's 2014 petition claims that the admission of her post-arrest statements to the police violated the Fifth Amendment because, at the time she made them, she was incompetent to knowingly and voluntarily waive her right to remain silent. At the suppression hearing, the district attorney had the burden of establishing that Taylor had made such a waiver. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010). It introduced testimony from the two officers who questioned Taylor in the hours after the crash, as well as one of the responding EMTs. Each officer testified that he read Taylor a form set of Miranda warnings, that she acknowledged each one, and that she voluntarily answered questions. Moreover, the "government's evidence of waiver was uncontradicted because [Taylor] did not take the stand at the suppression hearing . . . even though [s]he might have done so without risk that anything [s]he said could later be used against [her] at trial." *See United States v. Male Juvenile*, 121 F.3d 34, 42 (2d Cir. 1997) (citing *United States v. Mullens*, 536 F.2d 997, 1000 (2d Cir. 1976)).

Based on the testimony at the suppression hearing, the trial judge found that Taylor appeared to understand the questions she was being asked and answered them without hesitation. The trial judge acknowledged some testimony that Taylor had appeared at moments to be "dazed," "incoherent," or staring off into space, but ultimately concluded that there was "no evidence" that she was "intoxicated to the degree of mania or of being unable to understand the meaning of [her] statements." ECF No. 6 Ex. 2 at 194:20–25; *compare Mincey v. Arizona*, 437 U.S. 385, 400–401 (1978) (finding statements involuntary when the defendant was "on the edge of consciousness"). That finding is entitled to a presumption of correctness on habeas review, 28 U.S.C. § 2254(e)(1), and there is no evidence, let alone clear and convincing evidence, that the trial judge got it wrong.

## V. Blind Evidentiary Rulings

Ground Five of Taylor's 2014 petition appears to argue that the trial judge denied her due process by ruling on the admissibility, and commenting on the contents, of the Rikers Island tapes without knowing what was in them. That claim is flatly contradicted by the trial transcript, in which the trial judge made clear that he had reviewed transcripts of the portions of the tapes which the district attorney had indicated it would introduce if Taylor presented an insanity defense. ECF No. 6 Ex. 15 at 530:7–20. In her latest Memorandum of Law supporting her petition, Taylor also argues that the trial judge's decision that the Rikers Island tapes were admissible (although they were never actually presented to the jury) violated her rights to confrontation and against self-incrimination. In addition to lacking substantive merit—the Fifth and Sixth Amendments do not prohibit the admission of a defendant's own non-coerced, non-testimonial statements—this argument is procedurally barred because it has been raised for the first time in habeas proceedings.

## VI. Excessive Sentences

Grounds Two, Seven, and Eight of the 2014 petition all challenge Taylor's sentences as excessive or disproportionate. Because each of her three sentences is within the relevant statutory range under New York law, this claim is not cognizable in habeas proceedings. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). And even if it were, the New York courts' affirmances of Taylor's sentences—twenty years to life for murder, one to three years for driving under the influence, and two and 1/3 to seven years for reckless endangerment—were not unreasonable applications of the Supreme Court's Eighth Amendment decisions.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED.**

Brooklyn, New York  
August 15, 2017

**SO ORDERED.**

*Edward R. Korman*
Edward R. Korman
United States District Judge